### John Smith, Jr. v. Robert Hamilton.

*Ejectment. Parol agreement to settle a boundary.* A parol agreement, long acquiesced in, to settle a boundary between adjoining proprietors, being the result of an honest attempt to fix the true boundary, and according to which they have actually occupied, will be held good in an action at law, although the time has not been sufficient to establish an adverse possession.

*Heard May 12. Decided May 13.*

20 MICH.—O³.

Case made from Macomb Circuit.

Ejectment: For a strip of land lying along the east and west quarter line on section ten, in town five north, of range twelve east. The title to the east half of the north west quarter was vested in the plaintiff, Smith ; and to the east half of the south west quarter in the defendant, Hamilton ; the question in controversy being the true location of the boundary line between the parties.

The cause was tried by the Circuit Judge, whose finding of facts and conclusions of law are set forth in the record as follows:—

" Before proceeding to the evidence it was admitted that the plaintiff was the owner of the east half of the north west quarter of section ten; and that defendant was the owner of the east half of the south west quarter of the same section, and that the only question at issue was, as to where the east and west quarter section line of said section ten was located and established, as between the lands of the parties to this suit. To prove the quarter post between sections nine and ten as located by the government surveyor, a number of witnesses were sworn, and as to whether said post, or its proper location, as fixed by the original survey had ever been found, the testimony was very conflicting and uncertain ; but the Court finds that the original quarter post as located by the Government survey is as claimed by the plaintiff, and that by such survey the title of the land in question is in the plaintiff. The Court further finds that said quarter post so set by said Joel W. Manly was one chain and forty-five links south of the center of said sec-. tion, north and south, and one rod east of the section line between sections nine and ten. The Court further finds that in the month of March, in 1845, all the parties interested in said quarter line and owning and occupying land in part bounded by the same, among whom were the grantors of the said plaintiff, not being satisfied with the said Manly post, as being the original quarter post, applied to one Chas.

F. Mallary, then county surveyor, to run and establish said quarter line. That on the twentieth day of March, A. D. 1845, the said Mallary in the presence of and with the consent and under the direction of all the parties in interest moved the post forty-five links, and made a record thereof in the book of records of surveys kept for said county, of which the following is a copy.

" N. B.—The corner I (I, designating the said Manly quarter post) was found to be too far to the south, and by consent of Russel Myers, Jonathan Myers, William Allen and H. McCafferty, and all the rest concerned, was moved one chain and forty-five links to the north. Clement Chapel and Miles Beagle chainbearers, Charles Goodwin, flagman, were sworn." (Signed,) C. F. Mallary, County Surveyor.

" The Court further finds that immediately after the location of said post and line, by the said Mallary as aforesaid, the owners and occupants of land north and south thereof erected fences on said line, as line fences between them claimed to said line on each side thereof, and the said line has been acquiesced in by all parties interested in the same, until the commencement of this suit, (May 19th, 1864,) and now continues to be the boundary line. The Court further finds, that the plaintiff in this suit derives title through parties who directed and consented to the said quarter line designated by Mallary; and that it was designed and intended by the parties interested in said line at the time the same was designated and established by said Mallary, that the same should be and remain the true and permanent quarter section line running east and west through said section ten.

"From the foregoing facts the Court deduces the following conclusions of law :

" 1st. It being a question of doubt and uncertainty as to where the original government quarter post had been established by the original government survey, it was competent and lawful, for the parties in interest, to locate the same at the center of the section north and south, and having so

located said post and line, and acquiesced therein for more than nineteen years, the same will be binding upon them and their grantees.

" 2d. The parties interested having on the said twentieth day of March, 1845, by mutual agreement, established and agreed upon the line in question, so established by said Mallary as the boundary line between them, and acquiesced in the same from that day to the 19th day of May, 1864, the time of the commencement of this suit, occupying and improving their lands with reference to said line, are estopped from denying said line being the true boundary. And that the said plaintiff is not entitled to recover said lands in his declaration described, and that defendant have judgment for his costs to be taxed.

" Wherefore judgment was duly entered in said cause for the said defendant."

The judgment is now brought into this Court for review upon a case made.

*E. F. Mead* and *A. B. Maynard*, for plaintiff.

The Court below finds as a conclusion of law, that the plaintiff is equitably estopped from denying that the division line agreed upon in 1845, is not the true line as between the parties to this suit; that the facts establish a case of equitable estoppel, or estoppel *in pais*. To constitute an equitable estoppel, there must have been an act done or statement made by a party which cannot be contravened or contradicted, without fraud on his part and injury to others, whose conduct has been influenced by the act or omission. See *2 Smith's Lead. Cas. 642.* The primary ground of the doctrine is that it would be a fraud in a party to assert what his previous conduct had denied, when, on the faith of that denial, others have acted. *31 Penn. Stat. 331; 5 Met., 478 ; 18 N. Y., 392.* There must have been a *wrong* done on one side, and an *injury*, which is the direct effect

of that wrong, suffered on the other side. And this injury must affirmatively appear. *1 Gill., 439; 30 N. Y., 519; 10 ib. 402; 1 Selden, 394; 3 Min., 311; 2 Smith, L. C. 645.* It will be observed that in the finding of facts by the Court below, it is nowhere found that any improvements have been made by defendant upon the property in dispute.

A division line mistakenly located and agreed upon by adjoining proprietors, will not be binding and conclusive on them, if no injury would be done in disregarding it. *27 Mis., (6 Jones), 198; 9 Wend., 65.* It does not appear from the finding that there has been or will be any injury here. In absence of such fraud and injury, as will work an estoppel *in pais*, parties are not bound by consent to boundaries which have been fixed in error, until the statute term of prescription has run. *12 La. An., 730; 7 Ind., 453; 7 Allen, 494; 16 Texas, 74; 29 Conn., 391; 36 Mo., 507; 5 Met., 478.*

The New York cases hold uniformly that no possession short of the period prescribed by the statute of limitations, is sufficient to transfer the " title from one person to another, or estop the owner from claiming his own." Indeed, all the cases holding acquiescence conclusive, in cases of practical location on erroneous boundary lines, were so decided on the ground that the possession had continued for a period far in excess of the statutory period, and as stated by Judge Selden in the case of *Baldwin v. Brown, 16 New York (2 Smith,) 361,* ranged from thirty-six to forty-one years. *Terry v. Chandler, 16 New York, 354; Baldwin v. Brown, ib. 361; Adams v. Rockwell, 16 Wendell, 285; Clark v. Wethey, 19 ib. 320; Clark v. Baird, 5 Selden, 183; Raynor v. Timmerson, 51 Barbour, 517; Jackson v. Van Colver, 11 John, 123; Jackson v. McConnell, 12 Wend., 421; Vosburg v. Trenton, 32 N. Y., 561; Hazey v. Delewater, 35 Pa. St., 409; Orr v. Hadley, 36 N. H., 575; Kellogg v. Smith, 7 Cush., 375.*

*Giles Hubbard* and *Ashley Pond*, for defendant.

CAMPBELL, CH. J.

The action of ejectment in this case was brought to recover a small portion of land lying between the true government survey boundary of plaintiff's lands, and a line settled by agreement a little less than twenty years before the suit was begun. It appears from the finding that in 1845, the adjoining proprietors, being satisfied that the corner post fixed by a previous survey was not correctly placed, employed a surveyor who ran the line for them so as to change the location of one end about six rods; and the parties on both sides immediately set their fences in accordance with the new line, and have, as their grantees also have, ever since acquiesced in that location. The Court below found as matter of law that they were bound by that acquiescence.

We think the ruling was correct. It has been held very generally, that when there has been an honest difficulty in determining the lines between two neighboring proprietors, and they have actually agreed by parol upon a certain boundary as the true one, and have occupied accordingly with visible monuments or divisions, the agreement long acquiesced in shall not be disturbed, although the time has not been sufficient to establish an adverse possession. Where the transaction has not been such as to amount merely to an honest attempt to determine a doubtful line, the authorities have not permitted an agreement to stand which would operate as a violation of the statute of frauds. But where the parties have only tried to find the true boundary, it has been held that the statute was not infringed, and the line was fixed by acquiescence. The case of *Terry v. Chandler, 16 N. Y., 354,* points out the distinction, and the previous cases of *Jackson v. Van Corlaer, 11 J. R., 123,* and *Jackson v. Ogden, 7 J. R., 238,* covered the same ground which is insisted on in the present case. The principle has been recognized in many other cases, and, confined within these

limits is, we think, the law of New York. In Massachusetts the same rule was adopted in *Kellogg v. Smith*, 7 *Cush., 375.*

There is no doubt some conflict elsewhere, and there are some difficulties attending those cases which involve additional elements. It has been said in some cases, that the rule was one of equity rather than of law. But estoppels *in pais* are not unknown to the common law. And where in addition to a mere estoppel there have been such acts as would induce a court of equity to grant specific performance of a parol contract, we are quite willing to adopt those precedents which have transferred cognizance of such complete rights into courts of law. There is no good reason for refusing to recognize them in an action of ejectment.

We think the judgment should be affirmed with costs.

The other Justices concurred.