## CATHERINE BURNS v. JOHN T. MARTIN AND JAMES MARTIN.

*Boundaries—Correction by re-survey—Adverse possession.*

A re-survey is inadmissible in evidence to show that a private boundary is incorrect, if its starting point is outside of and does not belong to the immediate plan or local system by which the original survey was controlled.

A division line established by mutual agreement and acquiescence and constant occupancy for more than twenty years, cannot be changed without writing.

Error to the Superior Court of Detroit. Submitted October 28. Decided November 10.

EJECTMENT. Plaintiff brings error. Reversed.

*Stewart & Galloway,* for plaintiff in error.

*Griffin & Dickinson,* for defendants in error.

GRAVES, J. This is an action of ejectment brought by Mrs. Burns for a strip of land a few inches wide in block three (3) on the Thompson farm in the city of Detroit. The dispute hinges on the right position of the boundary between lots thirty-eight and thirty-nine. The plaintiff owns lot thirty-eight and the defendants lot thirty-nine, and she claims that they have encroached upon her lot thirty-eight. The defendants deny this and contend that they have confined their occupancy to the bounds of lot thirty-nine and that the plaintiff is now in fact holding a fraction of that lot against their right.

Thompson, the original proprietor, platted the premises in January, 1852, the survey being made by Mullett. Immediately thereafter the plaintiff's husband Thomas Burns contracted with Thompson for the purchase of lot thirty-eight and in the spring of 1852 built a house on it which is still there. Thompson subsequently carried out the contract by conveying to Burns, and he deeded to Mr. Gowan who in

turn conveyed to the plaintiff. About the time of Burns' purchase, Mrs. Ockford bought of Thompson lot thirty-nine and in June, 1875, she conveyed to one of the defendants who is her son-in-law. It is therefore seen that the parties' predecessors in title of the two lots began their holding from the original proprietor immediately after the lots were platted and that their purchases dated very near together.

The evidence was undisputed that at that time the lots were unfenced and that Mullett's stakes to make the lines and corners were standing, and that Burns and Ockford co-operated in putting up a fence between the two lots on the very line indicated by such stakes. The evidence was also undisputed that during the entire period from the spring of 1852 to June, 1875, when the grant of lot thirty-nine to one of the defendants took place, this original fence, apart from some partial alterations for the purpose of repairs needed, was maintained substantially at the same place and as the line fence between the lots; and that the respective proprietors not only tacitly recognized the line so indicated as the true one, but actually partitioned it into two equal parts in order to apportion and fix the duty and expense requisite to preserve the fence as a boundary, and thenceforward for more than twenty years actually maintained the fence and adhered to the line in accordance with the arrangement. Again, the evidence was uncontradicted that defendants are in possession of some little part of the premises on Burns' side of that line and claiming title thereto. The quantity can only be determined by a construction of the evidence.

To these facts the defendants opposed evidence to establish two things: *First*, that the line occupied by the old fence was not the true one; *second*, that the plaintiff had estopped herself from contending against the line claimed by the defendants.

The evidence relied on to show that the line of the old fence is incorrect consisted of a survey by Mr. Robinson and his explanation. For the purpose for which it was offered and laid before the jury this survey was of no value, and was entitled to no weight whatever. Its introduction was mis-

leading. That it should possess any value on the question at issue even under the defendant's theory, it should have proceeded from some mark or monument identified as a correct one to run and measure from, in executing the search for the line sought. But the survey had no such badge of fitness and credit. It was in substance a float.. The starting point, it is true, was at what was supposed to be a stake actually set by Mullett. But it was on the opposite side of the street and at a considerable distance away, and not shown to belong nor apparently belonging to the immediate plan or local system by which the survey of lots thirty-eight and thirty-nine was regulated and measured, and there is no ground for presuming that it has any such relation to the line in question as to control it or testify to its position.

In regard to the second point the position is, that when Robinson shifted the line in his survey for defendants in 1875, and they changed the fence accordingly and constructed a house with the eaves extending beyond the old line, the plaintiff virtually assented. It is needless to recapitulate the evidence relied on as showing this. It had no tendency to prove that the parties concurred in a removal of the line previously acted on. On the contrary, when fairly received, it indicates that the plaintiff and her husband were dissatisfied and that defendants knew it.

But apart from this consideration, if the facts are as they appear in the record, there was no uncertainty about the line to be cleared up and settled, and no room for any parol arrangements. The line was already defined and established by mutual agreement, and acquiescence and consistent occupancy for more than twenty years and no change was practicable without writing : *Smith v. Hamilton* 20 Mich. 433 ; *Joyce v. Williams* 26 Mich. 332 ; *Stewart v. Carleton* 31 Mich. 270 ; *Diehl v. Zanger* 39 Mich. 601 ; *Dupont v. Starring* 42 Mich. 492. See also *Turner v. Baker* 64 Mo. 218 ; *Terry v. Chandler* 16 N. Y. 354 ; *Vosburgh v. Teator* 32 N. Y. 568 ; *Nichol v. Lytle* 4 Yerg. 456 ; *Gilchrist v. McGee* 9 Yerg. 455 ; *Yarborough v. Abernathy* Meigs 413.

The learned judge below was led to take a different view and he submitted the case on the theory that the jury might be governed by Robinson's survey and might find that the plaintiff was estopped, and the result was a verdict for defendant. According to the case the plaintiff was entitled to recover whatever is held by defendants beyond the old ground line where the fence was originally set.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.