WHITE v. PEABODY.

1. BOUNDARIES—EVIDENCE OF LOCATION—TOWN PLATS—RESURVEY.
    The boundaries of a town lot, when in dispute, will be determined from the lines actually established upon the ground, agreed upon by the adjacent owners, and long acquiesced in by them, rather than from a recent survey, dependent upon a different construction of the plat.

2. TRESPASS—EVIDENCE—LOCATION OF BOUNDARY.
    The rule that the plaintiff in trespass *qu. cl.* is restricted in his proof to the lands described in his declaration cannot be invoked to exclude evidence of the true location of a disputed boundary.

3. BOUNDARIES—ACQUIESCENCE.
    Acquiescence in a boundary line fixed by agreement need not, to be effectual, have continued for a period equal to that prescribed by the statute of limitations.

4. NEW TRIAL—DISCRETION OF COURT.
    The denial of a motion for a new trial upon the ground of newly-discovered evidence will not warrant a reversal as for an abuse of discretion on the part of the trial court where the testimony relied upon was merely cumulative.

Error to Monroe; Kinne, J.   Submitted June 13, 1895. Decided July 2, 1895.

Trespass *quare clausum fregit* by Horace White against Lucien V. Peabody. From a judgment for plaintiff, defendant brings error. Affirmed.

*Randall & Corbin* and *E. R. Gilday,* for appellant.

*Elam Willard* and *C. A. Golden,* for appellee.

McGRATH, C. J. Plaintiff brought trespass in justice's court, describing his close as "Lot No. 10, and the adjoining portion of lot 12, occupied and owned by said plaintiff, in the Pusey plat in said village, and being the lot and land occupied as a homestead by said plaintiff." Defendant gave notice:

"That the title to lands will come in question, and that, before the committing of the said supposed acts complained of in the plaintiff's declaration, the village of Dundee had purchased a strip of land on lot 12 for a highway, and that whatever of the acts of the defendant complained of by the plaintiff were committed under and by the authority of said village."

Upon the trial in the circuit court, plaintiff disclaimed all interest in lot 12.

The plat was recorded in 1869. A section of said plat, excepting the dotted lines and the words "Proposed Street," and omitting figures denoting distances, is as follows:

106 MICH.—10

The land in question is the northerly portion of the proposed street. The dotted lines in lots 5, 6, 8, and 10 represent the lines of actual occupancy of lots 5, 6, and 8. Pusey conveyed lot 8 to one Snyder in 1870, and, within a year or two afterwards, conveyed lot 10 to one Collins. Snyder testified that he bought lot 8 22 years ago; that Pusey at that time showed stakes on the north and south lines of his lot; that he then planted cherry trees upon the lines indicated by the stakes; that the lines so indicated are the dotted lines upon the plat, and that he occu-

pied the lot between those lines for four years. Plaintiff offered other testimony tending to show that Collins, who then owned the land, some 21 or 22 years ago built a board fence on the line contended for by plaintiff herein; that the said fence was built with reference to a survey made at that time by one Bartlett, and on a line with stakes then standing; that the fence was maintained for 10 or 12 years; that the posts of said fence marked said line when plaintiff purchased, in 1885; that the west post of said fence is still standing; that, soon after said fence was built, a row of cherry trees was planted on a line about three feet north of said fence; that some of said trees were standing at the date of the trespass; and that lot 10 had been continuously occupied to the line of said fence since said fence was built. It further appeared that Tecumseh street was an old highway, originally four rods in width; that the fence along the northerly line of the land here platted had encroached upon said highway, and, when this plat was made, stood upon the line indicated by the dotted line; and that a stone stake, referred to in said plat, stood in said line at the west line of South street.

Defendant insists that the plat must control the description given in the declaration; that what plaintiff's evidence tends to show is that he has by adverse possession acquired title to a portion of lot 12, and under his declaration and disclaimer he cannot recover, in view of the rule in *Twogood* v. *Hoyt*, 42 Mich. 609, 613. It clearly appears, however, that the north line of the plat was not the old fence line in Tecumseh street, but the actual southern boundary of the highway; that the removal of that fence was contemplated; and it is evident that the measurements made by Bartlett were from the north line of the plat. The lots were sold from north to south. Pusey, as lots 8 and 10 were sold, assisted in locating the boundaries. He, as each was located, owned the lots south of the boundaries so fixed. The question in the present case is, what is the southern boundary of lot No.

10? and that is to be determined from the actual establishment of that line upon the ground, agreed upon by the adjacent proprietors, and long acquiesced in, rather than from a recent survey, dependent upon a different construction of the plat. In *Twogood* v. *Hoyt, supra,* the court say:

"The evidence offered upon this point would, however, be admissible as tending to show the location of the lands described in the declaration."

In *Diehl* v. *Zanger*, 39 Mich. 601, it was held that a resurvey, made after the monuments of the original survey have disappeared, is for the purpose of determining where they were, and not where they ought to have been; that a long-established fence is better evidence of actual boundaries settled by practical location than any survey made after the disappearance of original monuments; and that long practical acquiescence in a boundary between the parties concerned may constitute such an agreement on it as to be conclusive, even if it had been erroneously located. In *Flynn* v. *Glenny*, 51 Mich. 580, it was held that resurveys cannot be allowed to unsettle the lines of town lots after the lot owners have established such lines in accordance with stakes found planted, and in reliance on which they have purchased. The rule is well settled in this State that when parties by mutual agreement, and for that express purpose, meet and fix a boundary line, and thereafter acquiesce in the line so established, such line will be considered the true line, although the period of acquiescence fall short of the time fixed by the statute of limitations for gaining title by adverse possession. *Smith* v. *Hamilton*, 20 Mich. 433; *Joyce* v. *Williams*, 26 Mich. 332; *Stewart* v. *Carleton*, 31 Mich. 270; *Burns* v. *Martin*, 45 Mich. 22; *Jones* v. *Pashby*, 67 Mich. 459; *Wilmarth* v. *Woodcock*, 66 Mich. 331.

A number of assignments of error are predicated upon the theory that there was no testimony tending to show that Bartlett ever made a survey with reference to determining the location of lot 10, or that Collins ever

built a fence on the line of such survey. The witness La Longe testified that some 21 or 22 years ago Collins built a fence on the south side of lot 10, and that the fence was built with reference to Bartlett's survey, made at that time, and in line with stakes set. The competency of the witness does not seem to have been questioned. Another witness testified to the existence of stakes on the north line of lot 10.

Defendant moved for a new trial on the ground of newly-discovered evidence. The court denied the motion, and it is claimed that therein the court abused its discretion. The testimony suggested by the affidavits is principally cumulative. It was not claimed that Collins procured the Bartlett survey; on the contrary, the testimony tended to show that the survey had been made before Snyder bought. Collins says in his affidavit that in building the fence he was guided by stakes that he found standing. The testimony suggested is that of former owners of lot 10. We discover no abuse of discretion in the denial of the motion.

The judgment is affirmed.

The other Justices concurred.