TRITT *v.* HOOVER.

BOUNDARIES — GOVERNMENT SURVEY — DISPUTE — PAROL ADJUSTMENT.

> The rule that a boundary line, long treated and acquiesced in as the true line, becomes the legal boundary of the premises, regardless of the result of new surveys, is applicable to a case where the owners of premises divided by a township line, agreeing that the government surveyed line was crooked and incorrect, established by parol, and marked by a fence, a different line, in which they acquiesced for upwards of 30 years.[1]

Error to Cass; Coolidge, J. Submitted February 1, 1898. Decided February 16, 1898.

Ejectment by Peter A. Tritt against Michael W. Hoover. From a judgment for plaintiff, defendant brings error. Affirmed.

---

[1] On the question of adverse possession due to ignorance or mistake as to boundaries, the authorities are collected in a note to *Preble* v. *Maine Cent. R. Co.*, (Me.) 21 L. R. A. 829.

*John R. Carr* and *Edward Bacon*, for appellant.

*Harsen D. Smith*, for appellee.

LONG, J.   This is an action of ejectment for a strip of
land about 8 feet wide by 40 rods long, between the two
farms of the parties.   Each claims the land.   It appears
that in 1830 William Garwood and Lewis Edwards, Sr.,
became the owners of adjoining farms in Cass county.
The Edwards farm was immediately north of the Gar-
wood farm, and in the town of Pokagon, while the Gar-
wood farm was in Howard township; the two farms
being divided by the township line.   For many years
there was no division fence between them, but some time
prior to 1840 a lane was laid out, east and west, between
the farms, supposed to be near the township line.   This
lane was used in common by the parties.   About the
year 1840, Edwards and Garwood decided to establish a
division line, so that a line fence might be erected.   Mr.
Edwards claimed that the survey made by the govern-
ment surveyor was run too far north, and was crooked.
For the purpose of ascertaining the true line, the parties
employed Mr. Woolman, a surveyor, to run out the line.
This survey was made, and stakes placed along the line.
The matter thus rested until 1852, no division fence hav-
ing been erected in the meantime.   In 1852 Mr. Edwards
was about to go to Oregon, when Garwood asked him to
stake out the line before he went away.   This Edwards
did, and he and Garwood divided the line, and each
erected his portion of the division fence.   This fence, as
agreed upon by the parties, remained there over 30 years;
each occupying the lands up to the fence thus established.

In 1867 Beeson and Wood became the owners of the
Garwood farm, and claim that, in order to ascertain the
true line, they caused a survey to be made by Mr. Banks,
who located the corner of the section about 8 feet
north of the division fence erected by Edwards and Gar-
wood.   Mr. Beeson claims that he called the attention of
Mr. Edwards to this new corner found by Banks, and

that Edwards then told him it certainly must be the line, and it was all right. The defendant thereafter, through *mesne* conveyances, became the owner of the premises formerly owned by Garwood. In 1883 the plaintiff purchased the Edwards farm of the heirs of Lewis Edwards; and he claims that the line as marked and established by Edwards and Garwood in 1852, and upon which the fence was built, is the true line. In 1887 the defendant, without any notice to the plaintiff, caused this fence to be set over upon the land claimed by plaintiff about 8 feet, for the distance of 40 rods. The plaintiff put it back again where it originally stood, when the defendant again moved it over where he claimed the true line was located.

On the trial, Mr. Beeson was called as a witness, and testified that, after the survey by Mr. Banks, in 1867, he had a talk with Mr. Edwards, the then owner of the premises, but now deceased, in which it was agreed between them that, when the fence needed repairing, they would set it over on the line surveyed by Mr. Banks. Plaintiff introduced testimony tending to show that Mr. Edwards had departed this life, but that, soon after the Banks survey, he stated that he and Garwood had established the line, and that he had never consented, and never would consent, to its being moved. The jury found a verdict in favor of the plaintiff, and defendant brings error.

It is the contention of the defendant that the court erred:

1. In refusing to direct a verdict in favor of defendant.

2. In disregarding the application of the statute of frauds.

3. In charging the jury so that they might find for the plaintiff because of some parol agreement for establishing the line between Garwood and Edwards, although there was no dispute or doubt as to the location of the United States survey.

4. In charging so that they might find that plaintiff was entitled to recover without the aid of the statute of limitations.

5. In charging so that they might find plaintiff was

entitled to recover because of title acquired by adverse possession.

6. In charging so that they might disregard the evidence on the part of defendant as to the transaction of 1867, although the jury might believe this evidence to be true.

The court charged the jury, substantially, that if the agreement was entered into between Garwood and Edwards as claimed by plaintiff, the fence built as claimed, and the parties occupied up to the fence as claimed, Mr. Edwards acquired title by acquiescence before the year 1867; that the material fact in the case was whether the acts of Mr. Edwards, and the transaction between him and Mr. Beeson in 1867, estopped Mr. Edwards and his grantees from making any claim to this land; and that if they found there was an agreement, definite and fixed, at that time, that Edwards was to surrender this piece of land to Mr. Beeson, or an agreement by which he was to surrender the possession, and it was a definite and well-understood agreement, then the adverse possession of Mr. Edwards ceased, and his title by acquiescence was abandoned; that, if something further remained to be done to make it a definite agreement, then there was no surrender of possession, nor was there any act which created an estoppel. It appears that this fence remained there some 20 years after this agreement was claimed to have been made.

The claim of defendant is that there was no testimony showing, or tending to show, that the line established by Garwood and Edwards was on the original government surveyed line; that there was no evidence that the government surveyed line was in dispute between the parties, or that there was any uncertainty about the true location of that line. We think this contention cannot be sustained. It appears that one Brookfield made the original United States survey. The testimony shows that Mr. Edwards claimed that the Brookfield line had been run too far north, and that it was a crooked line, and the parties acquiesced in the idea that the Brookfield line was too far north, and

was crooked, and they entered into an agreement, not only to make it a straight line, but to put it where it should be according to the rights of the parties. The fence, as we have said, was built in 1852, and remained there for over 30 years before any one attempted to move it. It has been repeatedly held by this court that a boundary line, long treated and acquiesced in as the true line, ought not to be disturbed on new surveys, and that 15 years' recognition and acquiescence are ample for this purpose. *Smith* v. *Hamilton*, 20 Mich. 438 (4 Am. Rep. 398); *Joyce* v. *Williams*, 26 Mich. 332; *Stewart* v. *Carleton*, 31 Mich. 270. In *Dupont* v. *Starring*, 42 Mich. 492, it did not appear that any dispute, or even uncertainty, existed before the owners agreed upon the true line. In *White* v. *Peabody*, 106 Mich. 148, it was said:

"The rule is well settled in this State that when parties, by mutual agreement, and for that express purpose, meet, and fix a boundary line, and thereafter acquiesce in the line so established, such line will be considered the true line, although the period of acquiescence fall short of the time fixed by the statute of limitations for gaining title by adverse possession."

The court below was therefore not in error in submitting the question to the jury as to the arrangement between Garwood and Edwards in 1852, and it would have been error to direct the verdict in favor of the defendant.

The defendant has no cause to complain of the charge of the court in reference to the claimed agreement between Beeson and Edwards in 1867. The fence had been erected upon a line agreed to between the parties upon a claim made by Mr. Edwards that the original line was too far north. Mr. Garwood acquiesced in that claim. The rule is well settled that, before the possession has ripened into an actual title, the continuity of possession may be broken in several ways: By an entry of the legal owner; by abandonment of the possession by the occupant; by a subsequent recognition of the owner's title, or an acknowl-

edgment, made before the statute has run in his favor, that he has and claims no title to the lands occupied. 2 Wood, Lim. § 270. The court left the question to the jury to determine whether Edwards made an agreement as claimed with Mr. Beeson. The jury having found against that contention, the question must be regarded as settled.

The judgment is affirmed.

The other Justices concurred.