RIX *v.* SMITH.

1. BOUNDARIES—HIGHWAYS—AGREEMENT OF PARTIES.
    Where the owners of lands adjacent to a highway have acquiesced for many years in a change in the highway lines, have located the lines of buildings with reference to such change, and the last grantor of a lot has conveyed to another with an oral declaration recognizing such new boundary, the description in such conveyance, as against subsequent grantees, must be construed with regard to such boundary.

2. SAME—EVIDENCE—DECLARATIONS OF GRANTOR—ADMISSIBILITY.
    Declarations of a grantor contemporaneous with the making of a deed, and made for the purpose of settling the boundary of the land conveyed, are admissible in evidence as against the grantor and those claiming under him.

3. SAME—HIGHWAYS—CHANGE OF BOUNDARIES—AGREEMENT OF PARTIES—EFFECT—QUESTION FOR JURY.

Where lot owners, by building back from the line of a street, as shown on the plat, and occupying the space by sidewalk, apparently widen the street to that extent, the question whether the land conveyed by a deed of a certain number of feet of the lot should include or exclude the strip apparently abandoned to the street is for the jury, though there is no evidence of acceptance of the strip by the public authorities.

4. EVIDENCE—PAROL EVIDENCE VARYING WRITINGS—DEEDS.

Where the description in a deed calls for a certain number of feet in the depth of a lot, and not for a particular fraction of the lot, testimony that shows that the street in front of the lot is wider than the plat indicates, and that the grantee's land extends a corresponding distance farther from the street, does not vary the description in the deed by parol, but simply locates the boundaries of the land upon the ground.

5. SAME—DECLARATIONS—GRANTORS—GRANTEE'S TITLE.

Declarations of a grantor with respect to his grantee's title, made after the execution of the deed, and after the grantor had parted with his entire interest in the premises, are inadmissible.

6. EJECTMENT—EVIDENCE—ISSUES—SCOPE.

Testimony showing the feeble condition of plaintiff's grantor at the time of executing the deed on which plaintiff relies, and other circumstances tending to impeach the fairness of plaintiff's methods in procuring the deed, are not admissible in ejectment, but can only be considered in some equitable proceeding to vacate or reform the deed.

7. WITNESSES—COMPETENCY—TRANSACTIONS WITH PERSON SINCE DECEASED.

Where plaintiff and defendant in ejectment both claim under the same grantor, who is dead, the dispute being as to the location of the boundary between their respective holdings, defendant cannot testify as to the grantor's acts and conversation at the time of measuring off his land. (Section 10212, 3 Comp. Laws.)

Error to Van Buren; Carr, J. Submitted February 13, 1906. (Docket No. 141.) Decided July 23, 1906.

Ejectment by Jennie Rix against Eugene H. Smith.

There was judgment for defendant, and plaintiff brings error.   Reversed.

*Eugene W. Lawton*, for appellant.

*L. A. Tabor*, for appellee.

BLAIR, J.   This is an action of ejectment to recover a strip of land 22 feet long by 10 feet wide.   The rights of the respective parties to this strip of land depend upon the location of the west line of "lot 1 in block 2 of Dodge's addition to the village of Lawton."   Plaintiff and defendant derive their title through a common grantor, Jannette M. Morrill.   Defendant's deed was executed April 18, 1899, and plaintiff's on December 15, 1900.   Jannette Morrill was the widow of, and derived her title to lot 1 through, Charles Morrill.   Lot 1 is bounded on the west by Main street, which is described in the plat referred to in defendant's deed as being 66 feet wide.   In 1867 or 1868 Mr. Morrill constructed the defendant's building and a drug store adjoining it on the north.   The west line of these buildings, as well as of the other buildings in this vicinity, was located 10 feet east of the east line of Main street as platted.   The same situation prevailed upon the opposite side of the street.   Mr. Charles D. Lawton, who made the survey for Mr. Morrill, and who had made an earlier survey of Main street, testified:

"I located the brick stores on the west side of Main street across from lot 1.   These stores are now in the same place as they were at the time I made the survey. * * *

"Q. I would ask you where the front of these stores are in relation to the lots?

"A. On the line of the lots.

"Q. How far back west from the old line of the highway?

"A. Ten feet. * * * The distance from the front of the stores on the west side of Main street to the edge of the walk on the east side of the street is 76 feet.   The width of the sidewalk at the front of the stores is 10 feet.

"*Mr. Tabor:* It is admitted that the walks on both sides of Main street are 10 feet.

"*Mr. Lawton:* Between the land in controversy. * * *

" *Q.* What is the distance at the present time between the edges of the sidewalk ?

"*A.* Sixty-six feet, and the sidewalks are each 10 feet wide. * * * Going south on Main street, south of Third street, Main street from fence to fence across originally, it was 66 feet. It has been widened. I live on Main street, south of Third street, and in front of my house Main street is 66 feet wide, and with the walk makes 86 feet. * * * This is along the block of Dodge's addition further south. * * *

" *Q.* You say that Mr. Morrill built these two buildings that stand on the north part of lot one, the Smith and Showers Buildings, do you ?

"*A.* Yes, he did.

" *Q.* Now, you say at that time you stuck stakes 10 feet from the front of the lot ?

"*A.* I did.

" *Q.* That 10 feet is sidewalk, isn't it ?

"*A.* Yes, sir."

Juan McKeyes testified:

"I live at Lawton. My business is banking. I have lived in that vicinity for 40 years. I know what is known as Main street in the village of Lawton. It is 86 feet wide from store to store. They have been that way ever since they were built.

" *Q.* Did you ever know of any building being built inside of that 86 feet ?

" *A.* I think not.

" *Q.* Then the line of the street for more than 40 years has been right where it is now ?

" *A.* I think so. Very near that time, it has been just as it is now.

" *Q.* During that entire time, the street has been used and occupied by the public, and 86 feet wide ?

" *A.* Yes, sir. * * * I knew Jannette Morrill in her lifetime about 25 years previous to her death. * * *

" *Q.* Well, now, at the time she sold to Smith, do you know whether she was present on the lot that she sold to Smith ?

" *A.* Yes, she was. * * *

" *Q.* Did she tell what was the front of the lot or west end of the lot was ?

" *A.* I don't know as she told, she directed the measurement.

" *Q.* How many feet back ?

" *A.* I think 75 feet back.

" *Q.* Did she tell how far back to measure ?

" *A.* Yes, sir. * * *

" *Q.* Did she tell where that came to, any particular point ?

" *A.* We determined the point by measuring 75 feet.

" *Q.* Where did that come as to the alley ?

" *A.* Well, it came about to it, I think. I don't know as I could tell exactly where the alley was. There is a road through there, but it is hard to tell just where the alley would be, but this came to the west edge of it I should say. * * *

" *Q.* So that the land that was conveyed to Smith extended from the front of the store to the alley ?

" *A.* Yes, sir; that alley has been there 25 or 30 years or longer."

Defendant testified :

" *Q.* At the time you bought this land you may state whether or not it was measured by any one ?

" *A.* Measured by Mr. McKeyes and myself.

" *Q.* Well, was Mrs. Morrill present ?

" *A.* She was.

" *Q.* At the time you were measuring the land for the purpose of purchasing you may state if Mrs. Morrill made any statement as to where the west line was.

" *A.* I asked Mrs. Morrill where the west line was, and she said it commenced on the west end of the building.

" *Q.* Did she direct you where to commence measuring from ?

" *A.* She did.

" *Q.* Where ?

" *A.* The west end of the building.

" *Q.* How far back did you measure ?

" *A.* 75 feet. (To which questions and answers put to the defendant Smith, in regard to measurements, counsel for plaintiff objected, as contradicting defendant's deed, and an attempt to establish a deed by parol).

" *The Court:* Overruled pro forma. (To which ruling

counsel for plaintiff excepted, and such exception was duly allowed.)

"*Q.* What was said about the alley?

"*A.* I asked Mrs. Morrill whether the alley was laid out, and she said there was no laid-out alley.

"*Q.* What was said about the point where your land terminated, 75 feet terminated?

"*A.* She said the 75 feet terminated at the west edge of the alley?

"*Q.* West side of the alley?

"*A.* Yes, sir.

"*Q.* Did you measure it?

"*A.* We did.

"*Q.* State how near the alley it came.

"*A.* Just to the edge of the alley."

Charles Showers testified:

"I am the owner of the north part of lot one. I occupy that as a drug store. I own the building. I knew Gene Smith, the defendant. I was acquainted with Jannette Morrill in her lifetime. I know this alley. I expect it has been in constant use a good many years. I used it 16 years myself. I was draying, and I used it for hauling goods to the stores.

"*Q.* You may state if you was present, in 1897, at the time the measurements was made between Mrs. Morrill, Mr. McKeyes, and Mr. Smith.

"*A.* I was there, yes, sir.

"*Q.* Did you hear anything said by Mrs. Morrill as to where the west line of the lot was?

"*A.* I heard her say where to commence to measure. At the front of the building, and told Mr. Smith to measure back 75 feet.

"*Q.* Do you know where it come to?

"*A.* He said that it went to the alley.

"*Q.* You were there and saw them put the tape down?

"*A.* I was. Mr. McKeyes was at the front of the building and Eugene Smith out at the back and they measured off 75 feet and stuck a little stake.

"*Q.* Mrs. Morrill went back?

"*A.* Yes, she and Mr. McKeyes. This was in 1897. They commenced at the west end of the building. Mr. Smith went right out the east door 75 feet and stuck a stake. * * * I have measured my building and it is 75 feet from the front end. I have lived in Lawton 43

years. There are two trees in front of my building, and one in front of Smith's. &ast; &ast; &ast;

"*Q*. You have measured your building?

"*A*. Yes, sir.

"*Q*. And your building is right beside that?

"*A*. Yes, sir.

"*Q*. How long is your building from the front end?

"*A*. 75 feet."

The court submitted to the jury for their determination the location of the west line of lot 1, instructing them that if they found that such line was the west line of the sidewalk, their verdict should be for the plaintiff, but if they found that such line was the west front of the buildings, their verdict should be for the defendant. The jury found for the defendant, and plaintiff has brought the record to this court for review on writ of error.

Plaintiff's counsel have grouped the assignments of error as follows:

"1. The court should have directed a verdict for the plaintiff. The plaintiff has the legal title to the 10 feet by 22 in dispute. There are no disputed facts in this case.

"2. It was error to permit the defendant to contradict his deed and establish title to the land in dispute by parol.

"3. The object of all registry laws is to protect title to land. That plaintiff had a right to rely on the record of the deeds, and that she is a bona fide purchaser.

"4. That it was error to permit the jury to pass upon anything in this case, as all the facts are undisputed; that it was error to let the jury change the west boundary of lot one, as its location is not disputed and is permanently located.

"5. Prejudicial errors in conducting the trial."

We think the court did not err in submitting to the jury, as a question of fact, the true boundaries of the land described in defendant's deed. While, according to the plat, which was expressly referred to in the deed, the lines of trees at the outer edges of the sidewalks marked the east and west boundaries of Main street, the owners of the lands adjacent to the street had apparently widened

145 MICH.—14.

the street by 10 feet on each side. It is true that there is no evidence that the public authorities had constructed or repaired the sidewalks, or had done anything in the way of accepting this 10 feet covered by the sidewalk, but this is not conclusive of defendant's rights. Where the owners of lands adjacent to a highway have acquiesced for many years in a change in the highway lines, have located the lines of buildings with reference to such change, and the last grantor of a lot has conveyed to another with an oral declaration recognizing such new boundary, the description in such conveyance, as against subsequent grantees, must be construed with regard to such boundary. The jury were at liberty to find, in this case, that the declarations of the grantor were contemporaneous with the making of the deed, and were made for the purpose of settling the street boundary. They were therefore admissible. *Purkiss* v. *Benson*, 28 Mich. 538; *Reidinger* v. *Mining Co.*, 39 Mich. 30; *Twogood* v. *Hoyt*, 42 Mich. 609; *Hoffman* v. *City of Port Huron*, 102 Mich. 417; *Moran* v. *Lezotte*, 54 Mich. 83; *White* v. *Peabody*, 106 Mich. 144. As said in *Twogood* v. *Hoyt*, supra:

"Where streets * * * have, by the parties interested or by the public authorities, been opened, used, and acquiesced in, they thereby become permanent boundaries, and form new starting points in subsequent surveys of the premises."

In this case, for over a generation this street had been openly, visibly, and notoriously 86 feet wide. The lot line of the west side of the street is conceded to be 43 feet from the center, and the circumstances disclosed by the testimony are quite convincing that the owners of the lands on the east side intended the same location for the line of their lots. The lot in question is 132 feet deep, and the description in defendant's deed calls for 75 feet of this depth, and not for a specified fraction of the lot. There is therefore no varying of the description in the deed by parol, but simply a locating upon the ground of the east line of the street defined in the plat

as the boundary of these lots. This distinguishes the case from *De Long* v. *Baldwin*, 111 Mich. 466, relied upon by plaintiff. This holding disposes of the first four groups of the assignment of errors.

Certain of the objections to the admission of testimony made by plaintiff's counsel should have been sustained. The testimony of May Giddens to a conversation with Mrs. Morrill relative to plaintiff's title after her deed to plaintiff, and when she had parted with her entire title to the premises in question, was incompetent, and the court erred in receiving it.

The court also erred in admitting testimony of the feeble, diseased condition of Mrs. Morrill, and other circumstances tending to impeach the fairness of the plaintiff's methods in procuring her deed. Such testimony was not competent in a suit at law, but could only be considered in some equitable proceeding to vacate or reform the deed.

The court also erred in permitting the defendant to testify to Mrs. Morrill's acts and conversation at the time of measuring off his land. Such testimony was incompetent under the statute (3 Comp. Laws, § 10212), Mrs. Morrill being then dead.

We do not think it necessary to consider the other errors alleged, since they will not be likely to arise upon another trial.

The judgment is reversed, and a new trial granted.

McALVAY, GRANT, MONTGOMERY, and MOORE, JJ., concurred.