BREAKEY v. WOOLSEY.

1. BOUNDARIES—MONUMENTS—SURVEYS—EFFECT.
   Fences and monuments of long standing, established not long after a survey and plat were made, are better evidence of true boundary lines than surveys made after the original stakes have disappeared.

2. SAME—AGREEMENT—EFFECT.
   An agreement between adjoining landowners establishing a boundary line, acquiesced in by the parties, is binding, although the line established is not the original one.

Appeal from Calhoun; North, J. Submitted June 5, 1907. (Docket No. 27.) Decided July 1, 1907.

Bill by Julia E. Breakey against George S. Woolsey and Phoebe J. Woolsey to determine the boundary line of certain real estate. From a decree for defendants, complainant appeals. Affirmed.

Laura A. Lynn in 1901 was the owner of the west half of lots Nos. 2 and 3, of block No. 44, in Hurd's addition to the city of Marshall. She purchased them in 1888. There were at that time well defined fences along the westerly and northerly sides of said property, portions of

which were in existence when this suit was launched December 21, 1905. In 1901 Mrs. Lynn sold to the defendant George S. Woolsey the west half of lot No. 2, and the east fourth of lot No. 3,—

"Reserving the right to use the driveway along the west line of said lot, it being understood that each party shall have the right to use said driveway and that each party shall maintain and keep in repair one-half of said driveway, provided that the west line of said driveway shall be at least six feet and two inches from the house now located on the lot west of the above described premises."

Mrs. Lynn had built a house on the westerly part of this land, and a house and barn on the easterly portion, the part conveyed to Mr. Woolsey. The grantor also reserved the barn situated on the land conveyed to Woolsey. About midway between these two houses there existed, and had for a long time, a driveway. Shortly after the deed to Woolsey he and Mrs. Lynn measured from the westerly boundary line of lot 3 in order to determine the line between the westerly three-fourths of lot 3 and the easterly fourth, which was to be the boundary line between the two parcels of property. An iron stake was driven into the ground at the north boundary line. Mrs. Lynn moved her barn, and located it about one foot west of this stake, and Mr. Woolsey built a barn 14 inches east of the same. Subsequently Mr. Woolsey and Mrs. Lynn improved the driveway, straightening the edges and locating the western wheeltrack 6 feet 2 inches from the Lynn house, and placing cinders upon it. A woodshed had also been constructed on the westerly part of lot 3 with the eaves at the westerly line as indicated by the fence. In this condition in September, 1904, Mrs. Lynn and her husband, who had meanwhile become tenants by the entirety, sold and conveyed the west three-fourths of lot 3 to the complainant. The deed contained the following clause:

"Also including the right to use the driveway along

the west line of the east ¼ of said lot No. 3, according to the terms of a deed given by Laura A. Lynn to George S. Woolsey, on the tenth day of July, A. D. 1901."

A dispute subsequently arose between the parties to this suit in regard to this driveway, and the complainant, claiming that the land between the two lots was not located in accordance with the original plat, filed the bill in this case, asking the court to determine the boundary line between the parties, to locate a driveway and determine its width, and to restrain encroachments upon complainant's land. Answer and replication were duly filed, proofs taken in open court, and decree entered for the defendants. In addition to the above facts, the learned circuit judge also found that there was considerable inaccuracy in the plat of Hurd's addition, which was recorded over 50 years ago, and that, as to the property in this case, there was great uncertainty. Block No. 44 is cut up into a dozen or more city lots, varying in size, owned by different parties, and occupied by them and their grantors for half a century. On the block are numerous fences of long standing, and well defined. In one instance a monumental tree was placed at the intersection of the lines of four of these lots, and is still standing, and these various lots have for years been maintained relative to these old boundary lines, some of which have been known to exist for upwards of 50 years. Upon checking up these boundary lines from surveyors' monuments, found in a westerly direction, they are found to be accurate; but, on measuring the distance across block No. 44, it was discovered that there is a surplusage of about 1 inch to the rod, 31 inches in all, and, if the surveyors' monuments found in the easterly direction should be followed, the various property lines would be shifted from a few inches to upwards of a foot, and would unsettle practically all the north and south boundary lines of the whole block. It would necessitate moving the defendants' barn and the complainant's woodshed. A decree is entered establishing the line according to the measurements made by Mr. Lynn and Mr.

Woolsey at the time of the transfer of the land to Woolsey. In other words, he located it three rods east of the fence marking the west boundary line of lot 3.

*John C. Patterson*, for complainant.

*Miller & Miller*, for defendants.

GRANT, J. (*after stating the facts*). It is the contention of the learned counsel for the complainant that the deeds were made with reference to the original plat and monuments, and they must control. If the location of the original monuments and stakes was conclusively established, there would be some force in this contention. But the judge expressly finds that it was not, and that, in the absence of such location, the fences and other monuments, erected and established about that time, and ever since recognized, are better evidence of the actual location of the lot lines than are surveys based upon uncertain monuments. The evidence fully sustains his finding. The distance between the foundation walls of the two houses is 19 feet. The present driveway as it has always existed, and, as apparently agreed to by the Lynns and Mr. Woolsey, is 6 feet 10 inches wide, 6 feet 2 inches from the Breakey house, and 6 feet from the Woolsey house. The location of the driveway, as contended by the complainant, if of sufficient width for the passage of loads of hay (and it is conceded that such was the intention), would, as found by the circuit judge, necessitate the moving of the defendant's residence. No stakes of the original survey were found. The westerly fences of complainant's lot and other fences and monuments were established not long after the survey and plat were made. It was said in *Carpenter* v. *Monks*, 81 Mich. 103:

"Fences of long standing, erected upon what parties have called the true line, and up to which they have improved and cultivated, are better evidence of the true line than surveys made after the monuments have disappeared."

This feature of the case is ruled by that case, and also by *Flynn* v. *Glenny*, 51 Mich. 580, and other cases therein cited.

We are also of the opinion that the Lynns and Mr. Woolsey established a boundary line by agreement, and thereafter acquiesced in it, and so did the parties to this litigation, until the complainant believed that the original survey and plat would give her more land. Such an agreement is binding, although the line established is not the original one. *Brown* v. *Bowerman*, 134 Mich. 695; *Manistee Manfg. Co.* v. *Cogswell*, 103 Mich. 602; *F. H. Wolf Brick Co.* v. *Lonyo*, 132 Mich. 162.

The decree is affirmed, with costs.

CARPENTER, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.