### VELTMANS v. KURTZ.

1. DEEDS—COVENANTS—VENDOR AND PURCHASER—BOUNDARIES—RECOVERY FOR DEFICIENT QUANTITY—DESCRIPTION.

> Under a deed of one-half of a quarter section not referring to any plat, survey, or government boundaries, or mentioning the number of acres conveyed, the grantee who was informed at the time the conveyance was made that the fences surrounding the property were line fences, is bound, in an action of covenant for an alleged deficiency of 3.64 acres, by the description as fixed by such fence boundaries which had been in existence for upwards of 15 years, and he could not recover on the covenant for land included within the original government survey but extraneous to the lines determined by the fences.

2. SAME.

> Where parties by mutual agreement, and for that express purpose, meet and fix a boundary line, and thereafter acquiesce in the line so established between them, such line will be considered the true line.

3. SAME.

> The long practical acquiescence of the parties concerned in supposed boundary lines should be regarded as such an agreement upon them as to be conclusive even if originally located erroneously.

Error to Eaton; Smith, J.   Submitted June 26, 1911.
(Docket No. 90.)   Decided November 3, 1911.

Assumpsit by William Veltmans and Margaretha
Veltmans against Benjamin Kurtz and Ella Kurtz for
breach of the covenant of seisin in a certain deed of convey-
ance.   A judgment for defendants on a verdict directed
by the court is reviewed by plaintiffs on writ of error.
Affirmed.

*John L. Wright* (*Elmer N. Peters,* of counsel), for
appellants.

*Rollin H. Person,* for appellees.

MOORE, J.   October 6, 1906, plaintiffs purchased from
defendants certain land.   The description was as follows:

"All that certain piece or parcel of land situate and
being in the township of Delta, county of Eaton and State
of Michigan, and described as follows, to wit: The west
half of the northeast quarter of section thirty in town four
north of range three west, together with all and singular
the hereditaments and appurtenances thereto belonging, or
in anywise appertaining."

It will be noticed that no reference is made to any plat
or government survey, and the number of acres is not
stated.

Plaintiffs claim that at the time of this transaction the
defendants were not seised of 3.64 acres within the de-
scription in this warranty deed; that this 3.64 acres of land
was not within the fences surrounding the land possessed
and seised by defendants, but was in the possession of ad-
joining proprietors; that these parties had acquired title to
this land by adverse possession.   The plaintiffs instituted
this suit against defendants to recover damages for breach
of the covenant of seisin in the deed of defendants, and at
the trial, after plaintiffs had rested their case, both
plaintiffs and defendants requested the court to direct a
verdict in their favor.   The court directed a verdict for the

defendants, and the plaintiffs bring the case to this court by writ of error.

The cross-examination of William Veltmans was in part as follows:

"I have lived in that township since October 15, 1897, and during all the time since October 15, 1897, until I bought the 80 of Kurtz, I lived about three-quarters of a mile from the back end of the Kurtz farm, or about a mile and a half from the front end. I bought this farm of them October 6, 1906. I moved into that township in 1897. Lived there about a mile and a half from it before I bought this land. I knew the land was pretty good around there. After I bought it I had a conversation with Mr. Kurtz about putting up a fence; that was the next spring after I bought it, about the middle of February of the year 1907. That was the first I knew anything was wrong with the line.

"Q. Were there fences around the farm when you bought it?

"A. Yes, sir."

"Q. And you thought those were line fences until Mr. Kurtz told you differently? * * *

"A. Well, I thought it was a line fence; yes he told me it was a line fence.

"Q. When did he tell you those were line fences?

"A. When I bought the place he says, 'There is the line fences.'

"Q. When you bought the place, he pointed out those fences to you?

"A. Yes, sir.

"Q. Told you those were line fences?

"A. Yes."

And much more to the same effect. There was other testimony to the effect that the boundary fences had been in existence from 20 years to upwards of 35 years.

Counsel for plaintiff say in their brief:

"It is believed by the writer of this brief that the cases of *Rockwell* v. *Wells*, 104 Mich. 57 [62 N. W. 165], and *Nelson* v. *Gibe*, 162 Mich. 410 [127 N. W. 304], lay down the rule of law that determines the rights of the parties to this litigation, rather than the case of *Husted* v. *Willoughby*, 117 Mich. 56 [75 N. W. 279], as contended by the attorneys for defendants."

An examination of the first two cases mentioned will show they are easily distinguishable from the instant case. In *Jones* v. *Pashby*, 67 Mich. 459 (35 N. W. 152, 11 Am. St. Rep. 589), the court said:

"The court instructed the jury that the burden of proving the boundary line to have been established between Charles and James Richardson, and located as they claimed, devolved upon the defendants, and that they must do this by a fair preponderance of evidence before they could recover; also, that, before they could find a different line than the one established by the deeds, as interpreted by the Supreme Court, they must find from the evidence that they were agreed as to such other line as between them, and applied the deeds to such line and assumed and acted upon the assumption that the other line (as claimed by defendants) was the boundary line, and treated it as such; and that the center line was the only one claimed by them, and was the one recognized and treated as the boundary line.

"'The landmarks which were agreed upon at the time, and recognized since, as fixing the dividing line by the brothers in making the division, must govern, regardless of where the words of the deed would draw the line. If you find that the defendants have shown by a fair preponderance of evidence that there was such a line fixed and recognized as the dividing line, it must govern.'

"This instruction was good law, and fairly stated. * * *

"It has been frequently held in this State that where parties by mutual agreement, and for that express purpose, meet and fix a boundary line, and thereafter acquiesce in the line so established between them, such line will be considered the true line between them, notwithstanding the period of such acquiescence falls short of the time fixed by the statute of limitations for gaining title by adverse possession. *Smith* v. *Hamilton*, 20 Mich. 433 (4 Am. Rep. 398); *Joyce* v. *Williams*, 26 Mich. 332; *Stewart* v. *Carleton*, 31 Mich. 270; *Dupont* v. *Starring*, 42 Mich. 492 (4 N. W. 190)."

In *Husted* v. *Willoughby*, 117 Mich. 56 (75 N. W. 279), the following language was used:

"In *Diehl* v. *Zanger*, 39 Mich. 606, it was said:

" 'The long practical acquiescence of the parties concerned in supposed boundary lines should be regarded as such an agreement upon them as to be conclusive, even if originally located erroneously.'

"See *Smith* v. *Hamilton*, 20 Mich. 433 (4 Am. Rep. 398); *Joyce* v. *Williams*, 26 Mich. 332; *Stewart* v. *Carleton*, 31 Mich. 270; *Dupont* v. *Starring*, 42 Mich. 492 [4 N. W. 190]; *Burns* v. *Martin*, 45 Mich. 22 [7 N. W. 219]; *Jones* v. *Pashby*, 67 Mich. 459 (35 N. W. 152, 11 Am. St. Rep. 589 ). If, then, the agreement as to what should be regarded as the true line between these two descriptions, which was made when the surveyor was employed, is conclusive, it would logically follow that the line so established was the south line of the N. W. ¼ of the N. W. ¼, and the north line of the S. W. ¼ of the N. W. ¼."

See, also, *White* v. *Peabody*, 106 Mich. 144 (64 N. W. 41); *Tritt* v. *Hoover*, 116 Mich. 4 ( 74 N. W. 177); *Breakey* v. *Woolsey*, 149 Mich. 86 (112 N. W. 719). In *La Mont* v. *Dickinson*, 189 Ill. 628, 637 ( 60 N. E. 40, 43), the following language is used:

" The law is well settled that, where the boundary line between two estates is indefinite or unascertained, the owners may, by parol agreement, establish a division line, and the line thus defined will afterwards control their deeds notwithstanding the statute of frauds. The principle upon which this conclusion is arrived at is, that the effect of the parol agreement is not to pass real estate from one party to another, but simply to define the boundary line to which their respective deeds extend."

See, also, *Sneed* v. *Osborn*, 25 Cal. 619; *Young* v. *Blakeman*, 153 Cal. 477 ( 95 Fac. 888), and the many cases cited therein.

Judgment is affirmed.

OSTRANDER, C. J., and BIRD, BROOKE, and STONE, JJ., concurred.