## STORCH *v.* ROSE.

1. SAVING QUESTIONS FOR REVIEW — MOTION FOR NEW TRIAL — NECESSITY.

Where appellant moved for a new trial, but did not assign as a reason therefor that the verdict was against the weight of the evidence, that question cannot be reviewed on writ of error.

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DILIGENCE.

A new trial on the ground of newly-discovered evidence was properly denied where plaintiff had notice that the witness might be material, and the excuse made for neglecting to call him is that, upon being interviewed before the trial, he did not inform plaintiff's attorney of the facts set forth in the affidavit because he did not want to get mixed up in the matter.

3. CONTRACTS — BUILDING CONTRACTS — CONSTRUCTION — QUESTION FOR JURY.

In an action to recover for building a house and barn and for certain extras, under a contract partly oral and partly in writing, evidence examined, and *held*, that it was a question

for the jury what the contract between the parties actually was, and that it would have been error for the court to instruct that a certain memorandum and drawings and specifications constituted the contract.

Error to Saginaw; Gage (William G.), J. Submitted April 8, 1908. (Docket No. 7.) Decided May 1, 1908.

Assumpsit by Gottlob Storch against John T. Rose on a building contract. There was judgment for defendant, and plaintiff brings error. Affirmed.

*George C. Ryan*, for appellant.

*W. J. Lamson* (*Ernest A. Snow*, of counsel), for appellee.

OSTRANDER, J. We consider the exceptions in the order in which they are presented in the brief for appellant, making such reference to the record as is necessary. It is contended, first, that the verdict is against the weight of the evidence. Appellant moved for a new trial, but did not assign this as a reason therefor. Under the circumstances, we cannot consider the question.

The second contention is that it was error to refuse to grant plaintiff's motion for a new trial. The ground of the motion was newly-discovered evidence. The only affidavit filed in support of a motion for a new trial and appearing in the record, and which is not met by the counter-affidavit of defendant, is one made by Emil Jochen. Plaintiff was apprised of the fact that Mr. Jochen might be a material witness. The only excuse which is made in the record for neglect to call him is contained in his affidavit, in which he states that plaintiff's attorney interviewed him before the trial to secure his testimony and that he did not inform him of the facts stated in his affidavit because he did not want to get mixed up in the matter. Even if it can be said that Mr. Jochen's testimony would have been other than merely cumulative, no sufficient reason appears for not calling him as a witness upon

the trial.  See *Roberts* v. *First Nat. Bank of Yale*, 149 Mich. 507; *Canfield* v. *City of Jackson*, 112 Mich. 120.

The third and the fourth assignments of error relate to the charge as given and to refusals of the court to charge, and present the principal contention of the appellant. The plaintiff built a house and a barn for the defendant. In his bill of particulars is the item, "Contract for building house, $2,650. * * * Barn and materials, $593." The balance of a total claim of $3,689.75 is made up of items claimed to be for extra work and materials. Payment of $3,182 is admitted, leaving a balance of $507.75. It is the contention of defendant that plaintiff was to furnish labor and materials and build his house for $2,650; that he was to furnish the labor and materials and build a barn for $400, using the lumber and timber on the premises belonging to defendant; that defendant had paid to plaintiff personally $3,035, and had paid for certain material which plaintiff ought to have paid for, $371, or a total of $3,406. He asked for a verdict and judgment in his favor, and the jury returned a verdict in his favor of $78.80. The parties had no signed contract. The testimony introduced tends to prove that there was a dwelling-house in Saginaw which suited the defendant and his wife; that plaintiff and defendant and defendant's wife visited the house, looked it over and secured from the owner the plans according to which it was constructed; that plaintiff was to build defendant as good a house as the one so inspected, but not one like it, it being understood that the house cost more money than the defendant cared to pay for his own house. The plaintiff, using two sheets of brown paper, made an outline plan of a house without the elevation, showing the rooms on the first and second floors and the measurements, and upon the margins of the sheet upon which the plans were drawn made certain memorandums, as for example:

"The plumbing is to consist of one bath-tub, one washbowl, and one closet, in bath-room; and one sink in kitchen; also the necessary piping to conform with the

city ordinance. * * * The varnishing and paint are to be as good or better as said house referred to. There are also to be shelves and drawers in pantry to suit owner of building."

The memorandum prepared by plaintiff recited that plaintiff was to furnish all the material and all the labor necessary to construct a building for defendant.

" The building to be in size and divided in such rooms as shown on the plan drawn by me. The material to be used in said building, and the finish thereon, is to be as good as that on a certain building at the corner of Hoyt and Howard streets, that is to say, so much of the material as is to be used in this building to be erected; and the workmanship is to be equally as good and better than that of building referred to. * * * The outsides of said building are to appear as nearly as possible like those of said building referred to. * * * The price is to be $2,650 and to be paid as fast as necessary to complete said building in $200 payments."

Place was left for plaintiff to sign and under that was the following:

"And I, the undersigned, accept the foregoing, and agree to pay the twenty-six hundred and fifty dollars in payments as aforementioned."

The defendant was of opinion that there should be a contract entered into which would cover the entire subject-matter and at one interview between plaintiff and defendant he had requested that his attorney appear and he did appear for consultation. It is undisputed that, upon seeing the memorandum which had been prepared, and the plan which had been drawn, he said to them that the papers were so incomplete he would not advise defendant to sign the contract; that inasmuch as their contract was not all in writing they had better not sign anything. One has but to refer to the specifications concerning the plumbing to discover how uncertain the written contract would have been if it had been executed. The plans and specifications were given to defendant, were retained by him, and were not thereafter referred to or consulted by either

party. Plaintiff completed a house and defendant accepted it and no fault appears to be found with the workmanship and materials. As to the effect to be given to the plans and specifications, the court charged the jury as follows:

"Now the defendant claims that the contract was performed and that the price was $2,650, just as the plaintiff claims; but no claims that these plans and specifications were presented, as the plaintiff claims, but that these papers never were signed; that those never constituted a complete contract between them; that on the contrary, on the night that they finally agreed upon the plaintiff going on to do the work on this dwelling-house that it was distinctly agreed—and you have heard the testimony of the witnesses on that subject, the plaintiff and the defendant and his wife,—that it was distinctly agreed that this house was to be built similar to that or practically the same as that, upon the corner of Howard and Hoyt streets, in the city of Saginaw, belonging to the Stroebel sisters; as good or better; and that there were to be no extras; that it was distinctly understood and stated that there were to be no extras; and that the defendant should pay for no extras; and the plaintiff should charge for no extras. That, gentlemen of the jury, is one of the principal questions in this case for you to determine, as to what the contract of the parties was with reference to the erection of this dwelling-house and whether any extras were to be paid for or not. The defendant admits that the change in the back stoop, which you have heard about, was an extra; that that was different from what was talked originally and that he was to pay for that. * * * With regard to that original contract, gentlemen of the jury, I wish to say to you that these papers introduced in evidence, the plans and specifications, here, and this memorandum of agreement, may be taken into consideration by you in determining the probability or improbability of this contract, and in determining what the contract between the parties was. It is not signed by the parties. Neither of these papers are signed by the parties. You must examine that. You will have an opportunity to examine them, and determine from them and from all the evidence and all the facts and surrounding circumstances in this case, what the probabilities are with regard to that contract, and what the contract was between the parties;

but if you believe these papers constituted the only contract between the parties, then you have a right to treat them as the contract.  But if you are not satisfied by a preponderance of the evidence—let me repeat that—if you are not satisfied by a preponderance of the evidence in this case, that this constituted the entire contract, then you must determine what the contract was between the parties, from all the facts and all the surrounding circumstances."

The position of counsel for plaintiff was sufficiently indicated by his second request to charge:

"It is the claim of plaintiff that he set out to do his work in accordance with a written agreement which was not signed by himself or Mr. Rose.  I charge you as a matter of law, that contracts are executed by the parties to be charged by the signing and delivery of the papers, when the contract is in writing.  I also charge you as a matter of law, that if parties make an agreement and reduce it to writing, but do not sign it, but perform its terms, that the writing itself is evidence of the agreement, and by their performance they ratify the terms of the writing and are bound by it.  I also charge you as a matter of law, that if this plaintiff and this defendant reduced their agreement to writing, but never signed it, but performed its terms, or if Mr. Storch alone performed its terms, both of these parties would be bound by it, and the writing would be entitled to as much consideration as if they had signed and executed it, and their signatures and execution would be unnecessary."

Without going into details of the testimony, which would be unprofitable, we are satisfied that the instructions given upon this subject were as favorable to the plaintiff as the testimony warranted.  That plaintiff built a good house is not disputed.  That he built one satisfactory to the defendant is not disputed.  He did not build a house like the one to which reference was made in the specifications.  Whether he built the house attempted to be described in the plans and specifications he prepared could, in no event, be determined by reference to those plans.  Defendant says that, with exceptions which are immaterial in this discussion, the plaintiff built the house

he agreed to build, and no other. Plaintiff contends that because he did not build the house indicated by the plans and specifications and the memorandum of agreement, but did build a different house, he should be allowed as for extras. We think the question of what the contract between the parties actually was was a question for the jury, and that it would have been error for the court to have instructed them that the memorandum and the drawings and specifications constituted the contract between the parties.

Other of the errors which are assigned, and there are several, which rest upon the assumption that the plans, specifications, and memorandums referred to constituted the contract of the parties, require, in the view we have taken of the matter, no notice. The 15th assignment is not supported by the record. Those relating to the admission and exclusion of testimony have been examined without finding reversible error. Without approving the charge of the court with respect to the subject of interest, we cannot see how, as the facts were determined by the jury, it affected the plaintiff. The trial seems to have been fairly conducted, the real issues of fact properly submitted to the jury.

The judgment is affirmed.

BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.