WILSON *v.* JOHNSON.

1. AUTOMOBILES—HIGHWAYS AND STREETS—NEGLIGENCE—CONTRIB-
UTORY NEGLIGENCE—DIRECTED VERDICT.

    In an action under the survival act (3 Comp. Laws, §
10117, 3 Comp. Laws 1915, § 12383) for the wrongful
killing of plaintiff's decedent, a traffic officer, by being
struck at a street intersection by an automobile driven
by defendant when the latter attempted to cut the corner
in violation of law, where defendant's evidence that de-
ceased, who was not on duty at the time of the accident,
directed defendant in the course he took was contradicted,
a directed verdict on the ground of contributory negli-
gence was properly refused.[1]

2. SAME—LAW OF ROAD—CUTTING CORNER.

    The claimed signal by the deceased was no excuse for
defendant's cutting the corner, where he was already
in the act of doing it, and on the wrong side of the
highway.

3. SAME—LAW OF ROAD—MOTOR VEHICLE LAW—PASSING OTHER
VEHICLE.

    Where defendant neglected to signal a wagon ahead of
him of his desire to pass, in compliance with section
4815, 1 Comp. Laws 1915, when the wagon would turn
to the right and allow him to pass on the left, there being
ample room for two vehicles to pass on the right side of
the street, the court below was not in error in refusing
to charge that it was defendant's duty to pass to the
left of the wagon.

4. SAME—TRIAL—INSTRUCTIONS—APPEAL AND ERROR—NEGLIGENCE
—CONTRIBUTORY NEGLIGENCE.

    Where the general charge of the trial court on the law
of defendant's negligence and decedent's contributory neg-
ligence was as favorable to defendant as he was entitled

[1]On rules of road governing vehicles at intersection of streets
and when turning across street, see note in 41 L. R. A. (N. S.)
346.

to, he could not complain because not given in the exact words of his request.

5. SAME—HIGHWAYS AND STREETS—RIGHTS OF PEDESTRIANS AND VEHICLES.

Both the pedestrian and the driver of the automobile had a right to use the street, and their duty to exercise due care, such as ordinarily careful and prudent persons would, under like circumstances, was reciprocal; and each had the right to assume that the other would exercise due care and caution and obey the law.[1]

6. SAME—NEGLIGENCE—EMERGENCY—MISTAKE IN JUDGMENT — REQUEST TO CHARGE.

Defendant's request to charge that: "If the defendant made a mistake in judgment in such a great and sudden emergency as is disclosed in this case, what the defendant did could not be construed as negligence or carelessness," was properly refused because the question of whether or not the emergency was caused by the negligence of defendant was not incorporated therein.

7. SAME—NEGLIGENCE—SPEED—QUESTION FOR JURY.

The question as to whether the speed of the automobile was in excess of 10 miles an hour, in violation of law, was properly submitted to the jury, where there was testimony that it was going 10 or 12 miles an hour, and that deceased was pushed approximately 50 feet after being struck, although the clutch was out and the brakes were set; defendant testifying that with his car running 6 miles an hour he could have stopped it within 7 feet.

8. NEW TRIAL — NEWLY DISCOVERED EVIDENCE — DISCRETION OF COURT—PROBABLE RESULT.

There was no abuse of the discretion of the trial court in denying a motion for a new trial on the ground of newly discovered evidence, where it was not made to appear that the evidence was more than cumulative or would produce a different result on a new trial.[2]

---

[1] On reciprocal duty of operator of automobile and pedestrian to use care, see notes in 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 990.

[2] The question of circumstances under which cumulative evidence has or has not been held to render a different outcome probable is discussed in notes in 46 L. R. A. (N. S.) 911; L. R. A. 1916C, 1162.

Error to Isabella; Chester, J., presiding. Submitted January 2, 1917. (Docket No. 8.) Decided March 29, 1917.

Case by Jessie Wilson, administratrix of the estate of James Wilson, deceased, against James Johnson for the unlawful killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Affirmed.

*F. McNamara* and *F. H. Dodds*, for appellant.

*F. W. De Foe*, for appellee.

Plaintiff's intestate having lost his life by being struck by an automobile owned and operated by defendant, this action is brought under the "Survival Act" (3 Comp. Laws, § 10117 [3 Comp. Laws 1915, § 12383]) to recover damages because of the alleged negligence of the defendant.

The accident occurred on November 2, 1913, at the intersection of Main and Broadway streets, which are the two principal business streets, in the city of Mt. Pleasant in this State. Main street runs north and south, and at the intersection is 48 feet 9 inches wide. Broadway runs east and west, and is 50 feet 9 inches at the intersection. On the southwest corner is a store, on the northwest corner a hotel, on the northeast corner another store, and on the southeast corner a bank. At the time of the accident the deceased was walking east on Broadway, and he was hit by the automobile after he had stepped off the curb and before he reached the center of the street, and approximately on the crosswalk. The defendant was driving north on Main street within 6 or 7 feet of the east or right-hand curb, and so continued until he had reached a point opposite the center of the bank building. Defendant then took a northwesterly direction, and by the time he reached the crosswalk

he was between the center of the street and the west curb.

It is the plaintiff's claim that the deceased left the sidewalk walking east and with his head turned toward the east and north. Just before he was hit, he glanced to the south and saw the car, apparently for the first time, coming at the rate of 10 or 12 miles an hour, right upon him, and that he did not have time to step back and avoid it. Defendant's witnesses stated that, upon seeing the car, he took two or three quick steps backward and was hit by the left-hand side of the car. All witnesses agree that he was struck by the left-hand side of the front end of the car; that he fell over onto the fender or mudguard and was carried for some distance, and then fell to the pavement and was shoved along ahead of the car until it came to a stop. The evidence as to how far he was carried on the front end of the car varies from 3 to 15 feet. As to how far deceased was shoved the testimony also varies, ranging from about 15 feet from the north side of the square to the north sidewalk itself. The defendant and his wife both testified that, when the car had approached to within a couple of car lengths of the deceased, he looked at the car and nodded his head toward the west as if indicating that the car should go that way. The evidence further shows that as the automobile came up Main street a wagon was standing about in the center of the street, either in the square or else just north of the north side of the square.

The accident occurred about 4 in the afternoon and at 2 the following morning the deceased died, never having regained consciousness. The jury rendered a verdict for $1,268.40 in favor of the plaintiff. Thereafter defendant made a motion for a new trial, which was denied.

KUHN, C. J. (*after stating the facts*). The first question counsel for appellant request us to consider is their claim that the court should have directed a verdict for the defendant because of the contributory negligence of the deceased. This is based on the testimony of the defendant and his wife that the plaintiff's decedent, who was marshal of the city and had acted as traffic manager at the intersection square, directed the defendant in the course he took. The testimony is clear, however, that at the time of the accident the decedent was not acting as a traffic officer, and that he made no motion with his hands because these were in his pockets. The testimony of the defendant and his wife as to the nod of the head is contradicted by other evidence in the case, and clearly this question, under all the evidence, was for the jury and is not so free from doubt that it can be decided as a matter of law.

The only excuse given by the defendant for driving to the left of the intersection in violation of law was his claim that the wagon load of cement stood in the east side of the square. The claimed signal by the deceased was no excuse for his cutting the corner, because he was already in the act of doing it and on the wrong side of the highway when he claims the signal was given. As has been said, there is a hopeless conflict in the testimony of the witnesses as to the exact position of the wagon. Error is assigned because of the refusal of the court to charge that it was the defendant's duty to pass to the left of this wagon. It is true that, ordinarily, it is the duty of one vehicle to pass to the left of another going in the same direction, but to do so and cut the corner would be a violation of another statute. There was ample room for two vehicles to pass on the right side of the street. The law is specific as to what shall be done under such circumstances. The driver of the over-

taking vehicle shall express his desire to pass, and the vehicle overtaken shall turn to the right and give the other an opportunity to pass on the left. 1 Comp. Laws 1915, § 4815. It does not appear that the defendant made any effort to comply with the statute. The adoption of the rule contended for by the defendant would result, especially in cities where traffic is heavy, necessitating delays at street intersections, in automobiles continually cutting the corners.

Certain requests to charge were preferred as to the negligence of the defendant and the contributory negligence of the plaintiff's decedent. While they were not given in the exact language of the requests, the court in his general charge dwelled at length on the law of contributory negligence and, in our opinion, gave as favorable a charge with relation thereto as the defendant was entitled to.

In part, he said:

"The right to the use of the street lies in both parties, the pedestrian and the operator of the car; and their duty to exercise due care is reciprocal, whatever the character of the vehicle may be that was on the street, or the pedestrian on the street. The plaintiff's intestate when attempting to cross this highway had a right to assume that all other persons using the highway, including defendant, would exercise due care and that they would obey the law, and it was the duty of both the defendant and the decedent to exercise that care and caution that ordinarily careful and prudent persons would when moving along on this street. Let's go back just a moment. It was the duty of both the defendant and the decedent to exercise that degree of care that the ordinarily careful and prudent person would when moving along on this street, for the purpose of determining whether any danger was liable to come to either by reason of their being on the crossing. And they both should exercise care according to the circumstances surrounding them, and are bound to the alert and watchful performance of the duty due from all travelers on all highways, and

not walk nor drive blindly into positions that will endanger themselves or others. Of course, gentlemen, this does not go beyond the rule I have given you of ordinary care and prudence.

"If you find that the defendant in pursuing his course, or in changing his course, veered to the northwest by the direction of the deceased, conveyed to him by the nod of his head as claimed by the defendant, and the defendant then understanding that Mr. Wilson was the marshal of the city and that he had acted as a traffic officer on this particular intersection, then the defendant was not guilty of negligence in taking the course he took."

Others embodied a request to charge:

"If the defendant made a mistake in judgment in such a great and sudden emergency as is disclosed in this case, what the defendant did could not be construed as negligence or carelessness."

The question of whether or not the emergency was caused by the negligence of the defendant was not incorporated in this request, and this should have been done if it was desired to have this question submitted to the jury.

The court submitted the case to the jury upon the theory that the defendant may have been operating his car at the time of the accident at a greater rate of speed than 10 miles an hour. Defendant's counsel requested the court to charge the jury that there was no testimony in the case upon which such a theory could be based. Witness Newberry testified that the car was traveling 10 or 12 miles an hour. The defendant testified that with his car running 6 miles an hour he could have stopped it within 7 feet of the point when he realized deceased was in danger, that his brakes were in perfect working order, that his clutch was out and the car coasting as he struck deceased, that he never let the clutch in again after the collision, that he applied the brake at once, and did

not release it again until after deceased had fallen. There is testimony to show that, even though defendant applied the brakes as claimed, the car's momentum after it hit the deceased carried it, most of the time shoving him before it on the pavement, a distance of approximately 50 feet. This, in our opinion, was proof sufficient to warrant the submission of the question with relation to the rate of speed to the jury.

It is also claimed that the court erred in overruling defendant's motion for a new trial. It is said that the motion should have been granted because of the showing made as to newly discovered evidence, supported by tne affidavits of three persons who claimed to have seen the deceased nod to the defendant, as testified to by the defendant and his wife. In the recent case of *Branch v. Klatt,* 173 Mich. 31, at page 40 (138 N. W. 263, 266), this court said:

"Whether the newly discovered evidence is of such a character and a different conclusion ought to follow, or is probable on a retrial, is a question primarily and peculiarly addressed to the good judgment and discretion of the trial judge who heard and saw the witnesses and is familiar with the visual conditions of the case. That discretion will not, as a rule, be disturbed except in case of manifest abuse."

The trial judge said:

"The court is not persuaded that the showing regarding claimed newly discovered evidence is sufficient or is such as to justify the granting of a new trial."

We are not satisfied that the trial judge abused his discretion in denying this motion, as in our opinion it was not made to appear that the evidence was not cumulative and it would produce a different result on a new trial. See *Guerold* v. *Holtz,* 103 Mich. 118 (61 N. W. 278); *White* v. *Peabody,* 106 Mich. 144 (64 N. W. 41); *Morin* v. *Robarge,* 132 Mich. 337 (93 N. W. 886); *Cummings* v. *Baker,* 141 Mich. 536 (104 N. W.

979) ; *Storch* v. *Rose,* 152 Mich. 521 (116 N. W. 402) ; *National Surety Co.* v. *Grant,* 177 Mich. 348 (143 N. W. 5).

The judgment is affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.