*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN ONG,

      Plaintiff-Appellee,

v

CHERYL LEWIS and SUBURBAN MOBILITY
AUTHORITY FOR REGIONAL
TRANSPORTATION,

      Defendants-Appellants.

UNPUBLISHED
June 8, 2023

No. 361061
Macomb Circuit Court
LC No. 2020-002043-NI

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Defendants Cheryl Lewis and Suburban Mobility Authority for Regional Transportation (SMART) appeal the trial court's denial of their motion for summary disposition brought under MCR 2.116(C)(7) and (10). For the reasons explained in this opinion, we reverse.

## I. FACTUAL BACKGROUND

On the morning of March 2, 2020, while still dark, plaintiff and a coworker, both City of Birmingham employees, parked a municipal bucket truck in the southbound lane of Old Woodward Avenue and set up to remove Christmas lights from a tree in the median island between Old Woodward Avenue's southbound and northbound lanes. They placed cones beside and behind the bucket truck in the southbound lane but placed no traffic cones, signals, or other control devices in or around the northbound lane of Old Woodward Avenue to alert or otherwise warn drivers of northbound vehicles that workers were present or that they intended to work in the vicinity of the northbound lane. Nothing indicated that the bucket would be placed overhead above the northbound lane. Plaintiff got inside and he alone operated the bucket. The bucket had no reflectors or lights. He testified that he wore a fluorescent sweatshirt with reflectors on it. He raised the boom and extended it across the median, suspending the bucket over and protruding into the northbound lane. He then started removing the lights.

Lewis,[1] a SMART bus driver, drove a passenger bus northbound on Old Woodward Avenue arriving at plaintiff's location around 6:30 a.m. It was still dark outside and rainy and the streetlights illuminated the roadway. Lewis drove the bus 21 miles per hour in a 25 miles per hour speed zone. As Lewis drove the bus past the location of the bucket truck parked across the median island in the southbound lane, the bus struck the bucket occupied by plaintiff positioned over and protruding into northbound Old Woodward Avenue. She realized that she hit something but did not know what. She pulled the bus over, stopped, and exited the bus to investigate. Plaintiff testified that he did not see the bus before impact. The last thing he remembers is putting on the harness and going up in the bucket and regaining consciousness in the hospital. Plaintiff assumed that he was above traffic but he did not know the height at which he deployed the bucket. He did not look at the traffic at the time. Plaintiff admitted that no signage of any kind warned of a man working above the northbound lane. He admitted that the accident would not have happened if the bucket had not been too low and extended into the lane of oncoming traffic. In hindsight, he agreed that he could have done things differently and prevented the accident.

Plaintiff filed a two-count complaint against defendants alleging that Lewis had been negligent and acted grossly negligent and that SMART had liability as the owner of the bus and vicarious liability for entrusting the bus to its employee who acted grossly negligent and bore responsibility for the accident. Defendants answered by denying the factual allegations and legal conclusions and claimed as an affirmative defense that they each were entitled to governmental immunity. After conducting discovery, defendants moved for summary disposition on the grounds that Lewis did not act grossly negligent entitling her to governmental immunity under MCL 691.1407(2), nor acted negligently in driving the bus entitling SMART to governmental immunity under MCL 691.1407(1). Defendants also argued that the no-fault act, MCL 500.3135(2)(b), barred plaintiff from recovering damages because he was more than 50% at fault for the accident. Defendants relied on plaintiff's admissions, video recordings by the SMART bus's cameras, and the testimonies of two experts who investigated the bus, bucket truck, and scene of the accident, and measurements and collected data that they used to render opinions regarding the mechanism of the accident and its cause. Plaintiff opposed the motion and relied on his expert's report and testimony that placed the blame for the accident on Lewis for not recognizing the hazard and avoiding the accident. Plaintiff argued that genuine issues of material fact existed whether Lewis acted in a negligent and grossly negligent manner and should have avoided the accident. At the conclusion of the hearing on defendants' motion, the trial court ruled as follows:

> Well all right, look. While I'm not particularly impressed with Plaintiff's claims here, nonetheless, looking at it in the light most favorable I'm satisfied that there's an issue of fact there. The Court's going to deny the motion for summary judgment. All right.

Defendants now appeal.

---

[1] Not long after plaintiff commenced this lawsuit, doctors diagnosed Lewis with lung cancer. She became hospitalized in December 2020, and died on January 7, 2021.

## II. STANDARDS OF REVIEW

We review de novo a trial court's summary disposition ruling. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). We review de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(7). *Poppen v Tovey*, 256 Mich App 351, 353; 664 NW2d 269 (2003). In analyzing a motion for summary disposition under MCR 2.116(C)(7), the trial court must accept as true the contents of the complaint unless contradicted by affidavits, depositions, admissions, or other documentary evidence submitted to the trial court by the movant. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "The substance or content of the supporting proofs must be admissible in evidence." *Id*. "A motion brought pursuant to MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery." *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 6-7; 614 NW2d 169 (2000) (citation omitted). The applicability of governmental immunity is a question of law that we review de novo. *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). The proper interpretation and application of a statute are also reviewed de novo. *Id*.

"A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "A motion brought under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted). When a motion is brought under MCR 2.116(C)(10), a court "considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . ." *Bennett*, 322 Mich App at 642 (citation and quotation marks omitted; ellipsis in original). The court must view the evidence "in the light most favorable to the party opposing the motion," *Veenstra v Washtenaw Country Club*, 466 Mich 155, 164; 645 NW2d 643 (2002), "draw[ ] all reasonable inferences in favor of the nonmoving party," *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010), and refrain from assessing credibility or weighing the evidence, *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden*, 461 Mich at 121.

## III. ANALYSIS

Defendants argue that the trial court erred by denying their motion for summary disposition because they were entitled to governmental immunity and the exceptions to governmental immunity set forth in MCL 691.1405 and MCL 691.1407(2) were inapplicable. Further, defendants contend that the trial court erred by denying their motion on the ground that MCL 500.3135(2)(b) barred plaintiff from recovering damages in this action because the evidence established that plaintiff was more than 50% at fault. We agree.

Under MCL 691.1407(1) of the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*., a governmental agency is generally "immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." The GTLA also provides immunity from tort liability for employees of governmental agencies who are engaged in the exercise of discharge of a governmental function and acted within the scope and in the course of their employment, if their conduct did not amount to gross negligence that was the proximate cause

of the injury or damage. MCL 691.1407(2); see also *Love v Detroit*, 270 Mich App 563, 565; 716 NW2d 604 (2006). " 'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The governmental employee bears the burden of proving entitlement to immunity as an affirmative defense. *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008).

"Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden*, 461 Mich at 122. A plaintiff cannot establish gross negligence by merely showing the governmental employee committed negligence or that additional safety precautions could have prevented the injury in question. *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). A government employee is only grossly negligent if she demonstrated "a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id*. Gross negligence, as a matter of law, may only be found under circumstances in which, "if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Id*. There must be admissible evidence that the governmental employee's conduct was reckless. *Maiden*, 461 Mich at 122-123.

The determination whether a governmental employee's conduct constituted gross negligence under MCL 691.1407(2) that proximately caused the complained-of injury is generally a question of fact. *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). However, if reasonable minds could not differ, a court may grant summary disposition. *Id*. If no reasonable jury could find that the governmental employee's conduct amounted to gross negligence, the plaintiff's claim must be dismissed. *Chelsea Investment Group*, 288 Mich App at 264-265.

Governmental immunity is limited by "narrowly drawn exceptions." *Jackson v Detroit*, 449 Mich 420, 427; 537 NW2d 151 (1995). Respecting his claims against SMART, plaintiff invoked the motor vehicle exception to governmental immunity, MCL 691.1405, which provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." *Id*.

"The elements of an action for negligence are (i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage." *Moning v Alfono*, 400 Mich 425, 437, 254 NW2d 759 (1977). In *Composto v Albrecht*, 328 Mich App 496, 499-500; 938 NW2d 755 (2019), this Court recently explained:

> Generally, to establish a prima facie case of negligence, a plaintiff must establish (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) that the damages were caused by the defendant's breach of duty. Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm. The duty a defendant typically owes to a plaintiff often

is described as an ordinary-negligence standard of care. Under ordinary-negligence principles, a defendant owes a plaintiff a duty to exercise ordinary care under the circumstances. [Citations omitted.]

To maintain a negligence action, a plaintiff must demonstrate that a legal duty exists that requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. *Graves v Warner Bros*, 253 Mich App 486, 492; 656 NW2d 195 (2002). The trial court must examine the relationship between the parties to determine if it is the sort that a legal obligation should be imposed on one for the benefit of another. *Id*. In *Maiden*, 461 Mich at 131-132, our Supreme Court clarified:

Whether a duty exists to protect a person from a reasonably foreseeable harm is a question of law for the court. A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm.

In determining whether the relationship between the parties is sufficient to establish a duty, the proper inquiry is whether the defendant is under any obligation for the benefit of the particular plaintiff. This analysis concerns whether the relationship of the parties is of a sort that a legal obligation should be imposed on one for the benefit of another. [Quotation marks, ellipses, and citations omitted.]

The factors to consider when determining whether a duty exists include "foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach." *Krass v Tri-County Security, Inc*, 233 Mich App 661, 668-669; 593 NW2d 578 (1999). The rights and duties of motor vehicle drivers and pedestrians are reciprocal. *Wilson v Johnson*, 195 Mich 94, 99; 161 NW 924 (1917). Pedestrians must exercise reasonable care and caution when traveling on a road. *Id*. Likewise, a person must exercise reasonable care and caution while driving a motor vehicle. *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956); see also MCL 257.627(1) (stating that a person operating a vehicle should do so at a careful and prudent speed that would allow the driver to stop within the assured, clear distance ahead). A person, however, "must take care for his own safety as a reasonable, careful, prudent person would do under similar circumstances." *Malone v Vining*, 313 Mich 315, 321; 21 NW2d 144 (1946) (quotation marks and citation omitted).

Negligence in the operation of a motor vehicle consists of a violation of a statute or of the ordinary care standard required by common law. MCL 257.401(1). "Ordinary care means the care that a reasonably careful person would use under the circumstances." *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000). The duty to exercise reasonable care and caution requires a driver to recognize the conditions and circumstances of travel. *Ashworth v Detroit*, 293 Mich 397, 400–401; 292 NW 345 (1940).

"In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Ray v Swager*, 501

Mich 52, 63; 903 NW2d 366 (2017) (quotation marks and citation omitted). "Factual causation requires showing that 'but for' the defendant's actions, plaintiff's injury would not have occurred." *Id.*, see also *Kroll v DeMorrow*, 505 Mich 954, 954; 936 NW2d 828 (2020). "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Skinner v Square D Co*, 445 Mich 153, 165; 516 NW2d 475 (1994) (citations omitted). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.* (citations omitted). "Something more should be offered the jury than a situation which, by ingenious interpretation, suggests the mere possibility of defendant's negligence being the cause of the injury." *Id.* at 166 (citation omitted).

In *Ray*, our Supreme Court wrote:

> We take this opportunity to clarify the role that factual and legal causation play when analyzing whether a defendant's conduct was "the proximate cause" of a plaintiff's injuries under the GTLA. In any negligence case, including one involving a government actor's gross negligence, a court must determine whether the defendant's negligence was a cause in fact of the plaintiff's injuries. But the court must also assess proximate cause, that is, legal causation, which requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim. A proper legal causation inquiry considers whether an actor should be held legally responsible for his or her conduct, which requires determining whether the actor's breach of a duty to the plaintiff was a proximate cause of the plaintiff's injury. It is not uncommon that more than one proximate cause contributes to an injury. However, under the GTLA, we have held that when assessing whether a governmental employee was "the proximate cause" of the plaintiff's injuries, a court must determine whether the defendant's conduct was the one most immediate, efficient, and direct cause of the injury. [*Ray*, 501 Mich at 63-65 (quotation marks, ellipses, and citations omitted).

\* \* \*

> In *Beals* [*v Michigan*, 497 Mich 363, 365; 871 NW2d 5 (2015)], we considered the defendant lifeguard's failure to intervene in the deceased's drowning. While our analysis in that case was somewhat opaque, we believe *Beals* is best understood as holding that the lifeguard could not have been "the proximate cause" of the decedent's drowning because the plaintiff failed to show even a genuine issue of factual causation. When a plaintiff attempts to establish factual causation circumstantially, that circumstantial proof must go beyond mere speculation. The plaintiff in *Beals* failed to make this showing. We emphasized that any connection between the lifeguard's breach of a duty and the drowning was only speculative. [*Id*. at 374.] We also noted that "it [was] unclear that even a prudent lifeguard would have been able to observe and prevent the [deceased's] drowning," which further illustrated that the causal connection was "simply too tenuous." [*Id*. at 374 n 23.] In other words, the plaintiff failed to show that the lifeguard was a but-for cause of the deceased's death. Accordingly, we held that

the defendant lifeguard was not "the proximate cause" of the deceased's death for the purposes of the GTLA. The holding, if not all of the reasoning, of *Beals* is consistent with our understanding of the GTLA's use of "the proximate cause." [*Ray*, 501 Mich at 66-71 (some quotation marks and citations omitted).]

"[T]here may be more than one proximate cause of an injury." *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988). "When a number of factors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury." *Id*.

Defendants first argue that Lewis did not operate the bus negligently and certainly did not operate it in a grossly negligent manner resulting in governmental immunity barring the imposition of liability against both Lewis and SMART, because, if Lewis did not operate the bus negligently, then SMART cannot be held liable, and if Lewis did not operate the bus in a grossly negligent manner, Lewis cannot be held liable.[2] This case requires determining whether and to what extent Lewis had a duty to plaintiff and if her conduct constituted a cause in fact and the proximate cause of plaintiff's injury.

Lewis obviously had the duty to operate the bus as a reasonable bus driver would in like circumstances. The circumstances in this case, however, presented an extraordinary situation. The record reflects that, during the early morning while yet dark and raining, Lewis drove the bus in an ordinary manner, below the posted speed limit, northbound on Old Woodward Avenue. She approached an area that had no warning cones, other traffic devices, or a worker in her lane providing warning or otherwise indicating workers present, nor any warning of an intrusion by a worker or equipment into her traffic lane. The record indicates that, sometime before Lewis's arrival, plaintiff and Dix had parked the bucket truck on the other side of the median island in the southbound lane. The bus video indicates that the bucket truck did not have its main headlights on but did have on smaller yellow lights mounted above the main headlights and some flashing lights activated that were mounted higher on a steel frame. Those lights indicated the bucket truck's presence in the southbound lane. Plaintiff and Dix had placed cones beside and behind the truck in the southbound lane to warn and direct southbound traffic around the parked bucket truck. The bus video also indicates that Lewis maintained eye contact and attention to the northbound lane and proceeded to the area of the incident to the point of impact focused on the roadway ahead. The video reveals that at impact, Lewis realized that something hit the bus but she did not know what. No evidence in the record indicates that Lewis saw the bucket before impact. No evidence suggests that she acted recklessly or demonstrated a willful disregard of precautions or safety measures or acted with a singular disregard for substantial risks before, during, or after the accident.

The parties do not dispute that plaintiff placed the aerial bucket he alone operated and controlled in a position suspended over the northbound lane with the bottom of the bucket at approximately 108 inches above the ground and protruding into the northbound lane about 44

---

[2] Plaintiff does not dispute that SMART is a governmental agency or that Lewis was a governmental agency's employee who acted within the scope of her authority while engaged in the discharge of a governmental function when the accident occurred.

inches. The parties do not dispute that the bucket had no reflective material or lights on it or other devices illuminating it. Evidence also indicates that neither plaintiff nor his coworker placed any warning devices in or near the northbound lane, nor did either give heed to oncoming traffic in the northbound lane. The record also reflects that there are no bridges, elevated crosswalks, elevated signs, or other structures that span or extend over Old Woodward Avenue's northbound lane at or near the location of the accident. No signs warned drivers to be wary of overhead obstructions or indicated any structure's elevation that drivers of commercial vehicles needed to take into consideration while traversing below them on the roadway.

Under the circumstances presented in this case, it is questionable that a driver would have a duty to look up from the roadway to see, perceive, and react to obstacles that might impact the top of the bus. In other words, it is not readily apparent that an aerial bucket placed suspended over the roadway in the manner as in this case was reasonably foreseeable by an ordinary, reasonably competent bus driver. Plaintiff argued to the trial court and to this Court that Lewis had a heightened duty. But we are not persuaded that Lewis, as a matter of law, had a duty to see, perceive, and react to avoid hitting the unexpected aerial bucket suspended over the northbound lane.

Even assuming that Lewis's driving the bus on northbound Old Woodward Avenue constituted a cause in fact of the accident (i.e., but for Lewis driving the bus northbound on that roadway, the accident would not have happened), to establish a prima facie case of negligence, plaintiff additionally must prove with admissible evidence that Lewis's conduct was the proximate cause of the accident, i.e., that Lewis's conduct was the one most immediate, efficient, and direct cause.

The record, however, indicates that plaintiff's own admitted and undisputed conduct served as the most immediate, efficient, and direct causes of his injuries. Plaintiff had the legal responsibility to operate the bucket in a safe manner and not place it in harm's way with no regard for oncoming traffic. He admitted that he failed to do so. From plaintiff's position, it was reasonably foreseeable that buses and other commercial vehicles would traverse the area and drive in the northbound lane. Further, it was reasonably foreseeable that if plaintiff placed the aerial bucket at a 108-inch height and suspended it 44 inches into the northbound lane, vehicles with heights higher than 108 inches would impact the bucket. Plaintiff admits that he and his coworker failed to do anything to warn oncoming traffic of the intrusion into the northbound lane. Plaintiff unquestionably created the hazard and failed to take any precautions to prevent the accident. His conduct from the point of arrival at the scene to the point of impact served as substantial factors in producing the accident and his injuries. Under the circumstances of this case, objective analysis of the foreseeability of consequences of the conduct at issue leads us to conclude that plaintiff is the party who should be held legally responsible for the consequences.

We find no merit to plaintiff's contention that Lewis had a standard of care that imposed a heightened duty upon her to expect the unexpected and react to an unforeseeable hazard during the early morning hours without any reasonable warning. Plaintiff relies on his expert's assertions that Lewis had a duty to look above the bus, notice the suspended, intruding bucket, and avoid hitting it because (1) a remote construction sign unrelated to plaintiff's work zone might have alerted Lewis to something potentially happening further down the road, (2) a shadow of the bucket may have been visible alerting Lewis of something potentially hazardous above the roadway, (3)

the streetlights may have silhouetted the suspended bucket making it visible, and (4) the bucket truck on the opposite side of the median in the southbound lane had flashing lights that could have alerted Lewis of imminent danger. Objective analysis of the foundation for plaintiff's expert's opinions, however, establishes that he offered little more than speculation that some things in the environment might have given Lewis reason to look up. The bus video, however, indicates that the orange construction sign stood on the right-hand curb of the northbound lane a considerable distance before plaintiff's work zone. Plaintiff's expert appears to assert that drivers might connect the sign with plaintiff's work zone or might be alerted that something could be happening ahead. Plaintiff's expert's notion is based on nothing more than speculation.

The video also indicates that only a slight shadow on the median at the left-hand curb on the northbound lane near the work zone existed that might have been a shadow from the suspended bucket, although that is not conclusively determinable. Even supposing that is true, one cannot reasonably conclude that a bus driver paying attention to the northbound lane would see, perceive, and react to such slight shadow on the left-hand curb and draw a conclusion from it that something lurked suspended above the unrestricted traffic lane. Again, plaintiff's expert bases this notion on speculation.

The bus video does not reveal the bucket as the bus approached plaintiff's work zone. One cannot determine from the video footage whether Lewis had opportunity to actually see a silhouetted aerial bucket in her traffic lane as plaintiff's expert suggests may have been possible. The undisputed evidence establishes that the bucket lacked any reflective material or illumination to make it visible. Although plaintiff had reflective material on his sweatshirt, he too did not have a light illuminating him. Plaintiff's expert contends that plaintiff's reflective clothing could have been seen. That contention, however, rests on whether the bus's lights would have illuminated the area above the roadway. Plaintiff's expert did no testing or other data collection or measurements to support his conjecture. Plaintiff's expert also posits that Lewis did not see the bucket because of the bus's visor. Plaintiff's expert, however, did not test, measure, or collect any data to support that conjecture.

Defendants' experts, by contrast, provided actual scientific analysis supported by measurements and data to establish that Lewis drove with the requisite alertness and attention and faced an unreasonable and unexpected hazard created by plaintiff who placed himself in the dangerous position without concern for his own safety. Defendants' experts performed sight line analysis which demonstrated that the visor did not interfere with Lewis's view of the roadway or impede her ability to see the bucket if it was visible until after the bus got so close that steps to avoid the bucket suspended over the travel lane could not have been possible. The visor being down does not establish gross negligence nor even negligence because it could not occlude Lewis's sight line until there would have been no time to react and stop the bus. Further, defendants' experts provided unrebutted testimony that a driver in Lewis's position under the circumstances and the lighting conditions present would not have been able to see, perceive, and react to the negligently placed aerial bucket suspended over and intruding into the northbound traffic lane. The measurements and analysis demonstrated that, had she seen the bucket, at the point at which it might have been perceptible, she would not have been able to avoid the accident. They opined that evidence demonstrated that the suspended bucket lacked conspicuity sufficient for a driver to see, perceive, and react in time to avoid it. Plaintiff offered no substantive admissible evidence to rebut defendants' experts' testimonies.

Significantly, the video evidence establishes that Lewis, although attentive and alert to the northbound lane while driving toward plaintiff's work zone, did not see the bucket suspended in her traffic lane. Her exclamation after impact supports the conclusion that she simply never saw it coming. Plaintiff's expert offers nothing more than speculation that she might have been able to piece together the stray cues and become aware of the bucket and avoided the accident. The evidence itself does not support plaintiff's position nor does it permit acceptance of plaintiff's expert's opinion that Lewis had the last clear chance to avoid the accident. Plaintiff's expert's speculation also does not establish that Lewis acted in a grossly negligent manner.

Determination of the proximate cause of the accident in this case requires assessment of the legal responsibility of the actors involved. Moreover, because proximate cause is concerned with the foreseeability of consequences, only a human actor's breach of a duty can be a proximate cause. Objective analysis of the evidence in this case does not permit the conclusion that Lewis's conduct was the one most immediate, efficient, and direct cause of plaintiff's injuries. On the contrary, plaintiff's lack of due care for his own safety by failing to adequately warn northbound traffic in any way, negligent placement of the aerial bucket suspended over and intruding into the traffic lane, and lack of attention to oncoming traffic in the northbound lane while being in an extremely vulnerable position, and failure to maintain adequate clearance, all served as the immediate, efficient, and direct causes of plaintiff's injuries. Moreover, proximate causation requires that the hazard presented was reasonably foreseeable to a bus driver proceeding on a known bus route in the northbound lane. It is hard to fathom the proposition that a bus driver in the exercise of reasonable care would reasonably foresee the negligent placement of an aerial bucket suspended over and intruding into the bus's traffic lane.

Because defendants challenged whether Lewis owed plaintiff a duty under the circumstances of this case, the trial court should have considered the "foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach." *Krass*, 233 Mich App at 668-669. The record indicates that the trial court did not engage in such analysis. As discussed herein, the accident and ensuing injuries were not reasonably foreseeable. No relationship between the parties appears to have existed to create a legal relational obligation between plaintiff and defendant. Plaintiff was not a pedestrian, driver of another vehicle, passenger on the bus, or workman in an ordinary identifiable work zone. Instead, without warning to oncoming traffic, plaintiff inserted himself into the bus's oncoming path at an unexpected place during dark and rainy conditions. Although a high likelihood of injury from the collision existed, there is only a remote connection between Lewis's driving of the bus on the unobstructed roadway, without warning of an imminent danger, and plaintiff's injury. One also cannot reasonably ascribe moral blame to Lewis under the circumstances presented in this case. The blame rests solely with plaintiff. The imposition of a duty on Lewis would require drivers to exercise extraordinary caution to prevent unexpected accidents for which little if anything could be done by a driver in like circumstance. The burden and consequences of imposing a duty on Lewis that would extend to bus drivers and drivers of commercial vehicles does not seem reasonable and offers society little if any benefit. Analysis of these factors does not support the imposition of a duty upon Lewis.

We conclude that a driver of a bus or commercial vehicle under the circumstances presented in this case should not be held to have had a duty to recognize and respond to such an unexpected hazard. Further, Lewis's conduct cannot be held to be the proximate cause of the accident. Plaintiff did not address these essential elements of his prima facie case when challenged by defendants in their motion for summary disposition. Instead, plaintiff relied upon his expert's speculation. The record indicates that the trial court also did not address and decide the critical legal questions of duty and proximate cause. The trial court did not articulate any legal analysis and it is unclear from the record what issues of fact existed that it considered genuine and material that necessitated denial of defendants' motion.

Defendants argue that the trial court erred by not holding that Lewis's conduct did not rise to the level of gross negligence entitling her to governmental immunity. We agree. The trial court, therefore, erred by not granting her summary disposition under MCR 2.116(C)(7).

Defendants also argue that the trial court erred by not holding that Lewis did not commit negligence. We agree.

Trial courts "decide questions of duty, general standard of care and proximate cause . . . ." *Moning*, 400 Mich at 438. "Whether a duty exists to protect a person from a reasonably foreseeable harm is a question of law for the court." *Maiden*, 461 Mich at 131 (citations omitted). "A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Id*. (quotation marks and citation omitted). The relationship of the parties must be such that the defendant had a legal obligation to act for the benefit of the particular plaintiff sufficient to impose a legal duty to act upon the defendant. *Id*. at 132. "When the harm is not foreseeable, no duty can be imposed on the defendant. But when the harm is foreseeable, a duty still does not necessarily exist." *In re Certified Question*, 479 Mich at 508, 508; 740 NW2d 206 (2007). Whether a harm is reasonably foreseeable "depends on whether a reasonable person could anticipate that a given event might occur under certain conditions." *Iliades v Dieffenbacher North America, Inc*, 501 Mich 326, 338; 915 NW2d 338 (2018) (quotation marks and citation omitted). The foreseeability test requires objective analysis to determine whether a reasonable person in like circumstances would have foreseen the risk. *Bertin v Mann*, 502 Mich 603, 620; 918 NW2d 707 (2018). "[U]nder Michigan law, the ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing that duty outweigh the social costs of imposing a duty." *In re Certified Question*, 479 Mich at 515. "The inquiry involves considering, among any other relevant considerations: the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id*.

In this case, the parties do not dispute that Lewis had the duty to drive in a reasonably prudent manner, not in excess of the posted speed limit, while observing the roadway for other motor vehicles and pedestrians and maintaining awareness of reasonably foreseeable hazards. Plaintiff, however, argues that Lewis had a heightened duty to look for and avoid overhead hazards regardless of visibility, conspicuity, or the ability to perceive and react to them. Plaintiff does not specifically address whether the presence of an aerial bucket overhead protruding into one's traffic lane was reasonably foreseeable. Plaintiff also does not address the issue whether Lewis had a duty to anticipate plaintiff's undisputed negligent misuse of the aerial bucket. Although defendant raised the duty issue before the trial court, the court did not address the issue and appears to have

-11-

merely assumed the existence of an unspecified duty that encompassed the risk of harm posed by plaintiff's positioning himself in the bucket overhead and protruding in Lewis's lane of traffic.

No evidence indicates that Lewis failed to watch the roadway. Plaintiff appears to contend that Lewis had a duty to not only look out for pedestrians and other motor vehicles, but look up from the roadway into the trees or airspace above the bus to ascertain whether a bucket truck operator failed to yield the right-of-way and ventured into the path of oncoming traffic. A driver, however, is not required "to guard against every conceivable result, to take extravagant precautions, to exercise undue care," and is "entitled to assume that others using the highway in question would under the circumstances at the time use reasonable care themselves and take proper steps to avoid the risk of injury." *Hale v Cooper*, 271 Mich 348, 354; 261 NW 54 (1935). Thus, a driver who is driving in a lane in which she has a right to be and is not aware of another person's presence is not required to anticipate that a person will suddenly appear in her path. *Houck v Carigan*, 359 Mich 224, 227; 102 NW2d 191 (1960). These legal principles should apply equally in this case in which Lewis properly drove in a lane in which she had a right to travel and was not aware of the presence of the bucket in the airspace over the driving lane. Lewis cannot be held to have had a heightened duty to anticipate that a bucket would be in her path as plaintiff contends.

When considering the foreseeability factors for determination whether a duty existed, as previously discussed, the accident and ensuing injuries were not reasonably foreseeable. Lewis had no relationship with plaintiff beyond a very tenuous, hypothetical relationship of bus driver to an unidentified worker in the vicinity of the northbound traffic lane. Plaintiff provided no warning or notice of his presence in the northbound lane that could conceivably have created a legal obligation for Lewis. The circumstances of this case do not establish a legal relational obligation between plaintiff and defendant. The evidence establishes that plaintiff inserted himself without warning into the bus's oncoming path at an unexpected place under low light conditions that made seeing, perceiving, and reacting difficult if not impossible. Although a high likelihood of injury from the collision existed because of where plaintiff positioned the bucket, there is only a remote connection between Lewis's driving of the bus on an otherwise unobstructed roadway and plaintiff's injury. One cannot reasonably ascribe moral blame to Lewis under the circumstances presented in this case. The imposition of a duty on Lewis would require drivers to exercise extraordinary caution to prevent unexpected accidents for which little if anything could be done by a driver in like circumstance. The burden and consequences of imposing a duty on Lewis would not only extend to bus drivers but drivers of commercial vehicles with little if any benefit to society. Analysis of these factors does not support the imposition of a duty upon Lewis.

All that can be ascertained from the record in this case is that the trial court presumed that Lewis had a duty under the circumstances. The trial court stated that unspecified genuine issues of material fact existed but provided no means of knowing what those factual issues may be. The trial court did not explain its reasoning or indicate what substantively admissible evidence actually proffered by plaintiff in opposition to defendants' motion demonstrated the existence of material factual issues. The record indicates that the parties did not dispute the basic facts of the mechanism of the accident. In response to the admissible evidence presented by defendants including their expert's tests, measurements, and data based upon actual facts and analysis thereof, plaintiff proffered only his expert's hypothetical, speculative, and conjectured opinions that Lewis may have had the ability to see, perceive, and react to the negligently placed bucket in the northbound lane of traffic. The record does not reflect that the trial court scrutinized the expert opinions.

-12-

Expert testimony offered in opposition to a motion for summary disposition, however, should be evaluated by the trial court for admissibility and the trial court in this case should have determined whether plaintiff's expert relied on facts and data, or merely based his opinions "on assumptions that do not accord with the established facts." *People v Unger*, 278 Mich App 210, 248; 749 NW2d 272 (2008). "Summary disposition is not precluded simply because a party has produced an expert to support its position." *Amorello v Monsanto Corp*, 186 Mich App 324, 331; 463 NW 2d 487 (1990). "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Further, conclusory statements are not enough to create a genuine issue of material fact whether a duty was breached. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 470; 646 NW2d 455 (2002).

In this case, plaintiff's expert's report and testimony rested solely on speculation that Lewis had sufficient clues in the general area that sufficed to alert her of some activity happening somewhere in the vicinity of the roadway. Plaintiff's expert also speculated that Lewis could see, perceive, and react to the overhead and protruding bucket in her traffic lane in time to prevent the accident. The evidence, however, does not support his speculative positions and plaintiff's expert opinion, therefore, could not establish the existence of genuine issues of material fact.

Because Lewis did not have a duty under the circumstances, she cannot be held liable for negligence, and correspondingly, SMART is entitled to governmental immunity. The trial court's denial of summary disposition for SMART, therefore, must be reversed because (1) plaintiff failed and cannot demonstrate that Lewis had a duty to see, perceive, and react to the presence of the overhead aerial bucket protruding into her lane, and (2) plaintiff failed and cannot prove that Lewis's conduct constituted the proximate cause of plaintiff's injuries. Plaintiff, therefore, failed and could not establish a prima facie case of negligence against Lewis. Accordingly, SMART is entitled to governmental immunity and the dismissal of plaintiff's claims against it.

Defendant also argues that the trial court erred by not holding that plaintiff had more than 50% fault for the accident, barring him from recovery in this action. We agree.

The no-fault act places certain limits on tort liability. *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). However, "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(2)(b). A plaintiff is considered to be at fault if "the plaintiff's conduct was both a cause in fact and a legal, or proximate, cause of his damages." *Lamp v Reynolds*, 249 Mich App 591, 599; 645 NW2d 311 (2002). Although comparative fault is generally a question for the fact-finder, comparative fault may be decided on a motion for summary disposition if no reasonable juror could find that the defendant was more at fault than the plaintiff. *Huggins v Scripter*, 469 Mich 898, 898; 669 NW2d 813 (2003). "The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public

policy consideration." *Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991).

In this case, even if Lewis had a duty to not only look out for pedestrians and other motor vehicles but also to look up from the roadway into the trees or airspace to ascertain whether a bucket truck operator failed to yield the right-of-way and positioned a bucket into the path of oncoming traffic, and she acted negligently by not doing so, the undisputed facts establish that her degree of fault paled in comparison to plaintiff's extraordinary willful disregard for his own safety. Plaintiff did nothing to warn oncoming traffic, had sole control of the aerial bucket, positioned it above and protruding into the northbound traffic lane, failed to pay attention to oncoming traffic, failed to maintain adequate clearance, and failed to take any action to avoid the accident. Plaintiff indisputably breached the applicable standard of care and his conduct constituted the proximate cause of his injuries. No reasonable jury could find Lewis more at fault than plaintiff. Plaintiff clearly was more than 50% at fault for the accident. The trial court, therefore, erred by not granting defendants summary disposition under MCL 500.3135(2)(b).

The trial court erred by not granting Lewis summary disposition because plaintiff failed and cannot establish that she acted in a grossly negligent manner which entitled her to governmental immunity under MCL 691.1407(2). No reasonable jury could find that Lewis's conduct amounted to gross negligence. The trial court also erred by not granting SMART summary disposition because plaintiff failed to establish that Lewis acted negligently in driving the bus which entitled SMART to governmental immunity under MCL 691.1407(1) and dismissal of plaintiff's claims against it. Lewis did not have a duty to see, perceive, and react to an unforeseeable hazard and her conduct did not constitute the proximate cause of the accident. Further, no reasonable jury could find Lewis more than 50% at fault and the record evidence establishes that plaintiff's negligence constituted both the cause in fact and proximate cause of the accident such that he was more than 50% at fault for the accident which bars him from recovering damages from defendants under MCL 500.3135(2)(b).

Reversed and remanded for entry of an order granting summary disposition for defendants.

/s/ Mark J. Cavanagh
/s/ James Robert Redford